STOKER, Judge.
This is a suit filed by Terry Alexander, who was injured as a guest passenger in Kenneth Chevis’ car, when the car was involved in an automobile accident on February 28, 1986. Defendants are Nelma Dominick, the driver of the other car involved in the accident, Jimmie Dominick, owner of the car driven by Nelma, and Allstate Insurance Company, Jimmie Dominick’s automobile insurer. The accident occurred when both vehicles approached the same intersection from different streets, Chevis driving south and Dominick driving east. On seeing a stop sign at the intersection, Dominick slowed down. He failed to see other cars approaching, resumed speed without coming to a complete stop and entered the intersection. Chevis was driving on the favored street and had no stop sign. He saw Dominick slow down and, expecting her to stop, proceeded into the intersection also. When Dominick did not stop, Chevis braked but was unable to avoid a collision and struck Dominick’s car on the driver’s side between the back door and the back light. The accident occurred in Chevis’ lane of traffic at a point about ten feet into the intersection.
Plaintiff, Chevis’ guest passenger, sustained injuries for which he brought suit against defendants. The trial jury held in favor of plaintiff, finding Dominick 100% at fault in causing the accident, and awarded $15,000 in damages to plaintiff. Defendants appeal the judgment, assigning as errors the following:
1) The jury erred in finding that Nelma Dominick was 100% at fault in causing the accident.
2) The jury erred in awarding $15,000 to plaintiff in general damages.
Plaintiff answered the appeal and asks for damages and attorney’s fees on appeal *79 on the basis that defendants’ appeal is frivolous and taken only for the purpose of delay.
DOMINICK’S LIABILITY
Defendants contend that Chevis is at fault in causing the accident by failing to avoid the collision after seeing Dominick run the stop sign and by failing to keep a proper lookout and by failing to drive attentively. Defendants also contend that plaintiff is at fault for failing to warn Chevis, his host driver, that Dominick had not stopped at the stop sign when he saw this. Thus, defendants allege that Nelma Dominick is not 100% at fault in causing the accident and her percentage of liability should be reduced.
LSA-R.S. 32:123 provides in pertinent part:
“§ 123. Stop signs and yield signs
A. Preferential right of way at an intersection may be indicated by stop signs or yield signs.
B. Except when directed to proceed by a police officer or traffic-control signal, every driver and operator of a vehicle approaching a stop intersection indicated by a stop sign shall stop before entering the cross walk on the near side at a clearly marked stop line, but if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection. After having stopped, the driver shall yield the right of way to all vehicles which have entered the intersection from another highway or which are approaching so closely on said highway as to constitute an immediate hazard.
C. The driver or operator of a vehicle approaching a yield sign shall slow down to a speed reasonable for the existing conditions, or shall stop if necessary, before entering the cross walk on the near side of the intersection or, in the event there is no cross walk, at a clearly marked stop line, but if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway. Having slowed or stopped in this manner, the driver shall yield the right of way to any pedestrian legally crossing the roadway on which he is driving, and to any vehicle in the intersection or approaching on another highway so closely as to constitute an immediate hazard. Acts 1962, No. 310, § 1.”
Since Chevis was driving on the favored street, Dominick had a legal duty to come to a complete stop before proceeding into the intersection. Dominick also had a legal duty, after coming to a complete stop, to yield the right of way to Chevis, since he was closely approaching the intersection.
On the other hand, Chevis’ duty, as set forth by the court in Spencer v. Hynes, 452 So.2d 1291 (La.App.3d Cir.1984), was as follows:
“The principles of law involved in deciding this issue are as follows:

“With respect to the claim of failure to maintain a proper lookout it is well established in the jurisprudence that a motorist on a favored street has a right to assume that any driver approaching the intersection on a less favored street will yield the right of way. The driver can indulge in this assumption until he sees or should see that the other car has not observed the law. Doucette v. Pri-meaux, 180 So.2d 866 (La.App. 3 Cir. 1965).”

Audubon Insurance Company v. Knoten, 325 So.2d 624 (La.App. 4th Cir.1976). Although the motorist may assume that a stop sign will be obeyed by other motorists, he must nevertheless exercise caution that is commensurate with the circumstances. Further:

‘Preferences on favored streets created by statutes, signals, or signs, do not relieve the driver traveling on the favored street from ordinary care. When the superior motorist should realize reasonably that the inferior motorist will continue his approach and obstruct the superior motorist's passage across the intersection, he is guilty of negligence should he fail to take every precaution to avoid a collision. 
*80
Randall v. Baton Rouge Bus Company, 240 La. 527, 124 So.2d 535 (1960); Doyle v. Employer’s Fire Insurance Company, 349 So.2d 450 (La.App. 3rd Cir. 1977), writ denied 351 So.2d 775 (La. 1977); Meynier & Dillman Hardware Company v. Aronson, 229 So. 2d 365 (La.App. 4th Cir.1969), writ refused, 255 La. 485, 231 So.2d 396 (1970); Roussell v. Strug, 225 So.2d 34 (La.App. 4th Cir. 1969).’

Kirk v. Allstate Ins. Co., 366 So.2d 642 (La.App. 3rd Cir.1978), writ den., 369 So. 2d 154 (La.1978).
We must turn, therefore, to an examination of the circumstances of this accident to determine if plaintiff was contributorily negligent and, if so, to determine the percentage of his negligence. Any negligence of plaintiff must be related to, or be found in plaintiffs role as a guest passenger. Under ordinary circumstances a guest passenger’s conduct does not become a factor unless the driver is himself negligent. While there may be circumstances in which this will not be true, it is appropriate that we first consider the conduct of Chevis, the plaintiffs host driver.
Defendants allege that Chevis was driving in excess of the 25 miles per hour speed limit and that this contributed to his alleged inattentiveness. However, this allegation was refuted by the attending police officer who testified that, in his opinion, Chevis must have been driving about 25 miles per hour. This is supported by the testimony of Alexander although his testimony is somewhat inconsistent.
Further, Chevis saw Dominick slow down and he proceeded into the intersection on the assumption that Dominick would come to a complete stop at the stop sign. Chevis testified that when he saw Dominick’s car before him in the intersection he had no way to avoid the collision, beyond braking, since he could otherwise only have attempted to drive onto the sidewalk. Defendants contend that, had Chevis been more attentive, he would have had time to see and avoid the collision.
Obviously the jury believed Chevis’ version of the facts, rather than defendants’. We cannot conclude that the jury’s findings are clearly wrong. Therefore, we hold that Chevis was not contributorily negligent in causing the collision.
The duty of Alexander, as Chevis’ guest passenger, is set forth in the often quoted case of White v. State Farm Mutual Auto. Insurance Co., 222 La. 994, 64 So.2d 245 at 249 (La.1953), as follows:
“It is firmly established by the above cited authorities of this Court and others of the Courts of Appeal of this State, too numerous to mention, that a guest is under no duty to supervise the driving of the vehicle and he is not obliged to look out for sudden or unexpected dangers that may arise. Albeit, he has the right to place reliance upon the driver to discharge that obligation and, as aptly expressed by the Court of Appeal, Second Circuit, in Singley v. Thomas, 49 So.2d 465, 469, ‘ * * * is not required to monitor the operation or to pay attention to the road and other traffic conditions’ in the absence of a showing that he has actual or constructive knowledge that the driver is incompetent or unfit to operate the vehicle.
“On the other hand, the jurisprudence has imposed upon the guest an obligation to avoid an accident or injury to himself under certain conditions. That duty has been tersely said by this Court, in Delaune v. Breaux [174 La. 43, 139 So. 753], supra, to exist in cases where the guest ‘ * * * is aware of the fact that there is danger ahead, which apparently is unknown to the driver or may be unknown to him, or where a sudden or unexpected danger arises to the knowledge of the-guest, apparently not observed by the driver * * *.’ 174 La. at page 47, 139 So. at page 755. In such situations, it is incumbent on the guest to warn the driver of the danger and, if he fails to do so at a time when the driver is able to avert it, his dereliction may be said to be a contributing cause of any injury he may sustain.
“In addition to these instances of contributory negligence, recovery of a guest may be refused when he has knowingly *81 assumed a particular risk, such as riding with an intoxicated driver or one otherwise incompetent. This doctrine of assumption of risk has sometimes been applied indiscriminately by the courts as contributory negligence. James, Assumption of Risk, 61 Yale L.J. 141 (1952). Be this as it may, discussion of the doctrine is unimportant in this case for reasons to which we shall hereinafter advert.”
Por more recent applications of this rule, see Hutson v. Madison Parish Police Jury, 496 So.2d 360 (La.App. 2d Cir.), writ denied, 498 So.2d 758 (La.1986) and Crowe v. State Farm Mut. Auto. Ins. Co., 416 So.2d 1376 (La.App. 3d Cir.1982).
In the case before us, it is difficult to discern any contributory negligence on the part of plaintiff. Defendants contend he had a duty to warn Chevis that Dominick had run the stop sign. However, the rule requires a guest passenger who becomes aware of a danger to warn the host driver of the unexpected danger (such as a car running a stop sign) which the driver has apparently not observed. Defendants have not established that plaintiff was aware of Dominick running the stop sign before Chevis or that Chevis was unaware of it. Plaintiff testified that when he saw Dominick’s car in the intersection Chevis began to brake his car. Chevis was clearly aware of the danger prior to impact. Therefore, we cannot conclude that the jury was clearly wrong in finding that plaintiff was not contributorily negligent.
QUANTUM
The jury awarded plaintiff $15,000 in total damages, general and special. Medical testimony was offered by Dr. John Tassin, who examined plaintiff on March 4, 1986 and found that plaintiff was suffering from post-traumatic headaches and cervical and lumbosacral sprains. Dr. Tassin, who is plaintiff’s family doctor, was of the opinion that plaintiff’s complaints of dizzy spells, headaches and neck and lower back pain were genuine and resulted from the February 28 accident. He prescribed Motrin, an anti-inflammatory agent, Flexeril, a muscle relaxant, Gynegesic, a painkiller similar to Darvon, and Antivert, for the dizzy spells. Plaintiff received 15 painkillers from the initial filling of his prescription, which prescription could be refilled five times. However, plaintiff never refilled his prescription. Plaintiff did not return for a followup examination until February 7, 1987.
Plaintiff was never hospitalized and his physician did not prescribe any conservative measures such as traction or physical therapy although plaintiff’s physician stated that he would have ordered physical therapy if such service had been available in plaintiff’s area.
Based upon what plaintiff told him on February 7, 1987, Dr. Tassin found that plaintiff still had tenderness in his lower back and a decreased range of motion. A CAT scan of plaintiff’s back was negative. Dr. Tassin was of the opinion that plaintiff is not a malingerer and is suffering from chronic lumbar injury. Prior to the accident, plaintiff suffered from asthma and nerve problems.
Plaintiff testified that, since the accident, he cannot mow grass as often as he would like (before, he did so about twice a week) or help around the house as much as he feels he should. Plaintiff is 25 years old, single and lives at home. Plaintiff’s mother testified that plaintiff spends much of his time lying down in front of the television, whereas before he helped her around the house.
We find the jury clearly abused its discretion in awarding plaintiff $14,900 in general damages. (No claim has been made for lost wages. Medical expenses testified to by the doctor were $100 for office visits. No evidence of prescription costs was adduced.) After consideration of the evidence and past awards as reflected in the mass of cases, we believe that $7,500 is the highest award in general damages which was reasonably within the discretion of the trial court. Accordingly, we will reduce plaintiff’s award for general damages to $7,500.
FRIVOLOUS APPEAL
In Bellard v. Safeway Ins. Co., 442 So.2d 1314 (La.App. 3d Cir.1983), this court *82 set forth the standard for determining frivolous appeal:
“Appeals are favored in our law. We are reluctant to impose the penal provisions of LSA-C.C.P. Art. 2164 which provide for the award of damages for frivolous appeal. Such damages will be awarded only when it manifestly appears that the appeal was taken solely for the purpose of delay or that appealing counsel does not seriously believe in the position he advocates, even though the appeal lacks serious merit. Goad v. May, 376 So.2d 340 (La.App. 3rd Cir.1979).”
This appeal involved a liability issue commonly raised on appeal. Moreover, our conclusion concerning the issue of quantum indicates our view that a serious issue was raised on appeal. Therefore, we cannot say that penalties for frivolous appeal are clearly due here.
DECREE
For the reasons assigned the judgment of the trial court is affirmed on the issue of defendants’ liability and modified on the issue of damages, reducing the total damages awarded to $7,600. The costs of appeal are assessed to plaintiff and defendants equally.
AFFIRMED IN PART, MODIFIED IN PART.