543 So.2d 109 (1989)
Maudrey PETERSEN and Edwin Hollier, Plaintiffs-Appellees,
v.
STATE FARM AUTOMOBILE INSURANCE COMPANY, Cindy Lou Coffell and Allstate Insurance Company, Defendant-Appellee (Allstate), Defendants-Appellants (State Farm and Coffell).
No. 88-127.
Court of Appeal of Louisiana, Third Circuit.
April 19, 1989.
Rehearing Denied May 15, 1989.
*110 Karen R. Longon, Gerald J. Block, Lafayette, for plaintiffs-appellees.
Roy, Forrest & Lopresto, L. Albert Forrest, New Iberia, for defendants-appellants.
Roy & Hattan, Candice Hattan, Lafayette, for defendant-appellee.
Before GUIDRY, STOKER and KING, JJ.
STOKER, Judge.
This case arises from a two-vehicle collision which occurred on the afternoon of January 7, 1985 in Lafayette. Maudrey Petersen (plaintiff driver) and Edwin Hollier (Petersen's guest passenger) filed suit against Cindy Lou Coffell (defendant driver), State Farm Insurance Company (the liability insurer of the car Coffell was driving) *111 and Allstate Insurance Company (Petersen's uninsured motorist insurer). Allstate subsequently filed a third-party demand against Coffell and State Farm. At the time of the accident Coffell was driving a vehicle owned by E.B. Polson, whose liability insurer is State Farm. E.B. Polson is not a defendant in this lawsuit.
The trial jury held in favor of plaintiffs, finding Coffell to be 100% at fault in causing the accident, and awarded general and special damages of $77,300 to Petersen and $2,668 to Hollier. The trial court held State Farm liable to Allstate for $2,000 of medical expenses paid by Allstate on behalf of Petersen. The trial court also assessed expert witness fees and costs against defendants.
Defendants, State Farm and Coffell, appeal the trial court's judgment as to the assessment of fault between the parties, the trial court's refusal to admit a letter by plaintiff's attorney into evidence, the award of damages for Petersen's TMJ syndrome, and the expert witness fees awarded. Defendants have not appealed the amount of damages awarded to Edwin Hollier. Petersen and Hollier answered the appeal but failed to brief their assignments of error. Therefore, their assignments are considered abandoned. See Uniform Rules Courts of Appeal Rule 2-12.4.

FACTS
The collision between Petersen's and Coffell's vehicles occurred at the "T" intersection of Myrtle Street and South College Road in Lafayette. Myrtle Street is a two-lane street marked with a stop sign for traffic entering South College which has four lanes. South College forms the top of the "T."
At the time of the accident Maudrey Petersen was driving west on South College Road in a pickup truck in which her father Edwin Hollier was a passenger. Cindy Lou Coffell had been traveling south on Myrtle Street and attempted to enter the eastbound lane of South College from Myrtle Street. The speed limit on South College was 45 miles per hour.
Cindy Lou Coffell testified that she stopped at the stop sign where Myrtle Street joins South College Road, looked to her left and saw traffic approaching. Coffell believed the traffic was approaching slowly enough for her to proceed across the westbound lane of South College in order to enter the eastbound lane. Coffell observed a van in the outer westbound lane of South College which appeared to have stopped close to the Myrtle Street intersection. The van was driven by Ms. Cattrou, an eyewitness to the accident. Coffell testified that she thought she saw someone in the Cattrou van wave at her to proceed across the street. Coffell stated that she then looked to her left, right, then left again and took off across South College. Coffell's car stalled in the outer westbound lane. She restarted her car, looked to her left around the van and proceeded once more to cross South College. Coffell did not see Petersen's pickup truck approaching in the inner westbound lane until it struck the driver's side of her car.
Petersen testified that when she initially proceeded down South College she was in the outer westbound lane. Petersen saw a van in front of her being driven very slowly so she switched to the left, or inner, lane since she eventually had to turn left off South College anyway. As Petersen passed the van (Cattrou's) she saw the front end of Coffell's car in her lane. As she applied her brakes she struck the driver's side of Coffell's car. Coffell's car kept moving and pulled Petersen's truck around into the eastbound lane of South College where they both stopped. Petersen testified that she could not have avoided the collision by turning to the right because Cattrou's van was in the way; nor could she have avoided it by turning to the left because of oncoming traffic. Petersen testified that she was driving about 35-45 miles per hour at the time of the accident and that Cattrou was driving more slowly.
Ms. Cattrou testified that she saw the accident occur. Cattrou saw Coffell attempting to cross the westbound lane of South College from Myrtle Street and slowed her van but did not come to a complete stop. Cattrou saw Petersen *112 change lanes to drive around her, approach the intersection in the inner lane, then strike Coffell's car as Coffell drove into Petersen's lane of traffic. Cattrou thought she was driving 30-35 miles per hour and Petersen about 40-45 miles per hour. Cattrou said she was very close to the intersection when the accident occurred. She also testified that she did not wave to Coffell to cross the street and did not see Coffell's car come to a complete stop. After the accident, Cattrou had someone call the police and an ambulance since Petersen hit her chest on the steering wheel and Hollier struck the windshield with his head. She said that Coffell had a few cuts but seemed alright.
The investigating police officer testified that he found no debris or skid marks on the roadway. He observed moderate damage to the driver's side of Coffell's car, on the front fender, the door and the rear fender. He found moderate front-end damage on Petersen's truck. The officer stated there were no visual injuries to anyone.
Edwin Hollier testified that he bumped his head on Petersen's windshield and consequently suffered headaches for six to eight weeks.

OPINION

FAULT
Defendants contend on appeal that the jury erred in failing to find Petersen contributorily negligent in causing the accident. Defendants allege that, although Coffell failed to see Petersen's vehicle approaching the intersection, neither did Petersen observe Coffell's vehicle. Therefore, Petersen was negligent in failing to see what she should have seen and to take appropriate steps to avoid a hazardous traffic situation. Defendants rely heavily on the fact that Ms. Cattrou did see Coffell drive into the intersection and, accordingly, slowed down to avoid hitting Coffell's car. Defendants also allege that the fact that Petersen was traveling faster than Cattrou shows she was not driving with the caution necessary for the unsafe traffic situation created by Coffell. Finally, defendants' attempt to demonstrate Petersen's lack of attentiveness by pointing out that in her deposition she testified that she did not see Coffell's vehicle until it was completely across her lane, although at trial she testified that she saw Coffell's vehicle when it first began to enter her lane from in front of Cattrou's van.
We note at this point that defendants' sole challenge to the damages awarded to Hollier, Petersen's guest passenger, rests on their claim of comparative negligence on the part of Petersen.
An examination of the relevant statute, LSA-R.S. 32:123, is pertinent to determining Coffell's duty:
"§ 123. Stop signs and yield signs
A. Preferential right of way at an intersection may be indicated by stop signs or yield signs.
B. Except when directed to proceed by a police officer or traffic-control signal, every driver and operator of a vehicle approaching a stop intersection indicated by a stop sign shall stop before entering the cross walk on the near side at a clearly marked stop line, but if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection. After having stopped, the driver shall yield the right of way to all vehicles which have entered the intersection from another highway or which are approaching so closely on said highway as to constitute an immediate hazard.
C. The driver or operator of a vehicle approaching a yield sign shall slow down to a speed reasonable for the existing conditions, or shall stop if necessary, before entering the cross walk on the near side of the intersection or, in the event there is no cross walk, at a clearly marked stop line, but if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway. Having slowed or stopped in this manner, the driver shall yield the right of way to any pedestrian legally crossing the roadway on which he is driving, and *113 to any vehicle in the intersection or approaching on another highway so closely as to constitute an immediate hazard. Acts 1962, No. 310, § 1."
Coffell's duty, therefore, was to come to a complete stop and yield the right of way to any vehicles closely approaching the intersection on the favored street.
Petersen's duty, as set forth in Alexander v. Dominick, 533 So.2d 77 (La.App.3d Cir.1988), and Spencer v. Hynes, 452 So.2d 1291 (La.App.3d Cir.1984), was as follows:
"The principles of law involved in deciding this issue are as follows:

"With respect to the claim of failure to maintain a proper lookout it is well established in the jurisprudence that a motorist on a favored street has a right to assume that any driver approaching the intersection on a less favored street will yield the right of way. The driver can indulge in this assumption until he sees or should see that the other car has not observed the law. Doucette v. Primeaux, 180 So.2d 866 (La.App. 3 Cir.1965)."

Audubon Insurance Company v. Knoten, 325 So.2d 624 (La.App. 4th Cir.1976). Although the motorist may assume that a stop sign will be obeyed by other motorists, he must nevertheless exercise caution that is commensurate with the circumstances. Further:

`Preferences on favored streets created by statutes, signals, or signs, do not relieve the driver traveling on the favored street from ordinary care. When the superior motorist should realize reasonably that the inferior motorist will continue his approach and obstruct the superior motorist's passage across the intersection, he is guilty of negligence should he fail to take every precaution to avoid a collision. Randall v. Baton Rouge Bus Company, 240 La. 527, 124 So.2d 535 (1960); Doyle v. Employer's Fire Insurance Company, 349 So.2d 450 (La.App. 3rd Cir. 1977), writ denied, 351 So.2d 775 (La. 1977); Meynier & Dillman Hardware Company v. Aronson, 229 So.2d 365 (La.App. 4th Cir.1969), writ refused, 255 La. 485, 231 So.2d 396 (1970); Roussell v. Strug, 225 So.2d 34 (La.App. 4th Cir. 1969).'

Kirk v. Allstate Ins. Co., 366 So.2d 642 (La.App. 3rd Cir.1978), writ den., 369 So.2d 154 (La.1978)."
We must turn, therefore, to an examination of the circumstances of the accident to determine whether Petersen was contributorily negligent in causing the accident. Since Petersen was driving on the favored street and was closely approaching the intersection, Coffell had a legal duty, after coming to a complete stop, to yield the right of way to Petersen. Coffell admitted seeing Petersen's and Cattrou's vehicles approaching the intersection when she started across it, but believed them far enough away to allow her to cross safely. However, Coffell testified that her car stopped in front of Cattrou's van and had to be restarted. Cattrou testified that she did not see Coffell stop in front of her and that she had to greatly reduce her speed to avoid hitting Coffell.
Regardless of which version of the facts is correct, we find the trial jury did not commit manifest error in finding Petersen free from fault in causing the accident. If Coffell's car did stop in front of Cattrou's van, then Coffell was negligent in attempting to cross Petersen's lane of traffic after restarting her car, since Petersen's vehicle was close to the intersection. Coffell had a duty to yield to Petersen. If Coffell did not stop, then the jury clearly believed that Cattrou's van, which was very near the intersection, blocked Petersen's view of Coffell's vehicle until it was within her lane of traffic. Cattrou's testimony supports this finding. Petersen would not have had an opportunity to see Coffell in time to avoid the accident since she was just passing Cattrou's van, which was very close to the intersection, when Coffell pulled out in front of her. Whether Coffell was just starting to enter Petersen's lane or was completely blocking it at the time of the accident makes little difference if Petersen was only about a car length away from Coffell when she saw *114 her. Petersen testified that she could not have stopped in time, nor could she go right into Cattrou's van or left into the oncoming traffic. The jury clearly found the testimony of Petersen and Cattrou more credible than that of Coffell and found that Petersen could not have avoided the accident.
Defendants allege that Petersen was negligent in driving faster than Cattrou. The fact that Petersen was driving faster than Cattrou is inconclusive to establish her negligence. It was not alleged or shown at trial that Petersen was driving in excess of the speed limit. Petersen had a duty, under LSA-R.S. 32:64, to drive at a reasonable and prudent speed, given the conditions and potential hazards existing on the roadway. However, defendants failed to establish that Petersen saw or should have seen the hazard created by Coffell in time to avoid the accident by reducing her speed.
When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). After careful review of the record, we find that the jury's evaluations of credibility are reasonable and the evidence furnishes a reasonable basis for finding Petersen free from fault. The jury did not commit manifest error in finding Coffell 100% at fault in causing the accident.
Therefore, neither Petersen's nor Hollier's award of damages will be reduced for comparative negligence.

INTENT TO INFLATE CLAIM FOR DAMAGES
Defendants proffered an exhibit consisting of a letter authored by Petersen's counsel dated April 17, 1985. Portions of that letter were made the subject of a Motion in Limine by plaintiffs. The trial judge ruled at trial that the letter was inadmissible to show plaintiff's intent to "build" the case because of defendants' failure to establish a proper foundation for its admissibility. Defendants contend the trial judge erred in refusing to allow them to place the letter in evidence and that this refusal caused the damages awarded to Petersen to be excessive.
The letter in dispute is set forth below:
 "April 17, 1985
Jill Taylor
State Farm Insurance Co.
P.O. Drawer 53247
Lafayette, LA 70505
 Re: Maudrey Petersen
 Vs. State Farm Insurance, et al
 No. 18-4186-541
Dear Jill:
Please be informed that I will advise my client to accept $12,500.00 in general damages plus provable specials for her claim against E.B. Polson. Ms. Peterson is still on medication and will be seeing Dr. Charles Olivier for pain in her shoulder and side next Thursday. As I am sure your are aware, even if Ms. Peterson's esophageal condition was preexisting, you would be liable for the aggravation of that condition. The fact is Ms. Peterson was in the accident, immediately taken to the hospital, and at that time began experiencing the problems for which she is being treated. She was experiencing no such symtoms before this incident.
Unless I hear from you by Friday April 19, 1985 at 5:00 P.M., I will be filing suit along with a motion to produce policy limits on Monday morning. At that point, I will not advise my client to settle this case in any shape, way or form until I have a significant amount of time built into this suit in order that we might obtain a substantial amount of money in judicial interest alone.

Please be further advised that Mr. Edwin Hollier rejects your offer to settle this claim for $250.00 plus specials.
Thanking you for the cooperation you have displayed thus for, I remain,
Sincerely,
*115
 /s/ Karen R. Longon
 Karen R. Longon"
(Emphasis added)
Defendants point particularly to the emphasized part of the letter as indicative of Petersen's intent to inflate her claim for damages and of probative value in determining Petersen's veracity.
Compromise or offers to compromise are generally inadmissible to prove liability, but they may be admissible for other purposes. Launey v. Thomas, 379 So.2d 27 (La.App.3d Cir.1979), writ denied, 381 So.2d 1233 (La.1980); Broussard v. State Farm Mut. Auto. Ins. Co., 188 So.2d 111 (La.App.3d Cir.), writ denied, 249 La. 713, 190 So.2d 233 (La.1966), cert. denied, 386 U.S. 909, 87 S.Ct. 855, 17 L.Ed.2d 783 (1967); Belanger v. Employers Mut. Liability Ins. Co., 159 So.2d 500 (La.App. 1st Cir.1963), writ denied, 245 La. 949, 162 So.2d 8 (La.1964). See also LSA-R.S. 22:661; LSA-C.E. Art. 408(A) and Official Comments (effective January 1, 1989).
Defendants assert that the letter is not offered as proof of liability, but rather as proof of intent to inflate Petersen's claim for damages. The trial judge found that defendants had not established the foundation for admissibility of the letter for that purpose. The trial court found specifically that the letter was irrelevant as to the stated purpose for its admission in that it was written by plaintiff's attorney rather than by plaintiff and it sets forth plaintiff's attorney's intentions rather than plaintiff's. Also, the letter can be interpreted as an intent to limit the time in which attempts at compromise will be made, rather than as an intent to inflate the damages claim. Nor is there any reference to an intent to inflate the special damages by running up the medical bills; rather the letter speaks only of time and judicial interest. Finally, the trial judge noted that the referrals to the medical personnel used by Petersen were made by her doctors; none of the medical expenses incurred by Petersen were at the instigation of her attorney.
The trial judge properly excluded the letter from evidence because defendants failed to lay a foundation of relevancy. See LSA-R.S. 15:441, 442. The letter does not establish any motive or intent on the part of Petersen, nor does it relate to Petersen's claim for special damages, other than in respect to the judicial interest owed by defendants. Therefore, defendants have not proven an intent by Petersen to inflate her damages claim as a basis for reducing her damages award.
Perhaps the best reason for excluding the portion of the proffered letter from jury consideration is because of its limited probative value. In fact, we believe it had none. In any event, its limited probative value is outweighed by the prejudicial effect which giving it to the jury would have. In essence, we hold that whatever may be made of counsel's alleged assertion of intent to inflate her client's claim, such does not show that the value of the claim was inflated in fact.

QUANTUM
Defendants contend that Petersen's award for damages should be reduced because of her intent to inflate her damages claim as proven by the letter discussed above and because of her contributory negligence. Petersen was awarded damages for her injuries resulting from the accident, an ulnar nerve lesion, TMJ syndrome and rotator cuff impingement. Petersen underwent extensive physical therapy and ultimately underwent surgery. Defendants have not complained of the award of damages for Petersen's injuries, other than her TMJ syndrome which is discussed below, except as they may be reduced by comparative negligence or for the trial court's allegedly erroneous refusal to admit plaintiff's attorney's letter into evidence. As already discussed, Petersen's damages will not be reduced on either of these bases because they have not been proven by defendants.
What the defendants do argue in their brief is that the jury erred in awarding to Petersen damages for temporomandibular joint (TMJ) syndrome. Defendants contend that Petersen's TMJ syndrome was caused by her preexisting dental problems and that Dr. Barrios misled the jury in order to *116 help Petersen "maximize" her recovery against defendants.
In a personal injury suit, the plaintiff bears the burden of proving a causal relationship between the accident and the injuries complained. The test is whether the plaintiff has shown through medical testimony that more probably than not the subsequent medical treatment was necessitated by trauma suffered in the accident. Aucoin v. State Farm Mut. Auto. Ins. Co., 505 So.2d 993 (La.App.3d Cir. 1987); Richard v. Walgreen's Louisiana Co., 476 So.2d 1150 (La.App.3d Cir.1985). When symptoms of an injury appear shortly after a traumatic incident that are consistent with that incident and continuously worsen, a defendant who contests the cause-in-fact relationship must show some other particular incident could have caused the injury in question to overcome plaintiff's case. Davis v. Galilee Baptist Church, 486 So.2d 1021 (La.App.2d Cir. 1986); Miller v. Allstate Ins. Co., 221 So. 2d 908 (La.App. 1st Cir.1969).
Dr. Barrios found that Petersen was suffering from TMJ syndrome. He concluded that Petersen's preexisting dental problems, such as an uneven bite, missing teeth, a preference for chewing on the right side of her mouth and a tendency to grind her teeth at night, predisposed her to have TMJ syndrome. His initial preexamination diagnosis, based only on Petersen's health questionnaire, was that her missing teeth caused the TMJ syndrome. However, Dr. Barrios later concluded that it was caused by the accident, due to the neck and shoulder pain Petersen suffered as a result of the accident. Dr. Barrios testified that cervical strain is a common cause of TMJ syndrome.
Defendants rely on Dr. Barrios' initial diagnosis for their allegation that Dr. Barrios misled the jury. However, we find this an inadequate basis for defendants' conclusion. Defendants have failed to impeach Dr. Barrios' testimony. The jury clearly found his testimony credible and we cannot find that it was manifest error for the jury to conclude that Petersen's TMJ syndrome was caused by the accident. Although defendants showed that TMJ syndrome can be caused by a dental defect, they have not proven that this in fact caused Petersen's TMJ syndrome to appear. Plaintiff carried her burden of proving the accident probably triggered the TMJ syndrome by medical testimony. Defendants have not proven that the treatments were unnecessary and, accordingly, the damages awarded relating to the TMJ syndrome will not be reduced.

EXPERT WITNESS FEES
Defendants' final contention is that the trial judge erred by awarding expert witness fees to Dr. Domingue and Dr. Barrios of $800 each. Defendants complain that the trial judge failed to follow the provisions of LSA-R.S. 13:3666 in determining the costs and that no testimony as to amount was adduced at trial or by a rule to show cause. Also, defendants allege that the judgment presented to the trial judge for consideration and signature was not presented to either defense counsel for approval.
LSA-R.S. 13:3666 provides for compensation of expert witnesses as follows:
"§ 3666. Compensation of expert witnesses
A. Witnesses called to testify in court only to an opinion founded on special study or experience in any branch of science, or to make scientific or professional examinations, and to state the results thereof, shall receive additional compensation, to be fixed by the court, with reference to the value of time employed and the degree of learning or skill required.
B. The court shall determine the amount of the fees of said expert witnesses which are to be taxed as costs to be paid by the party cast in judgment either:
(1) from the testimony adduced upon the trial of the cause, the court shall determine the amount thereof and include same or,
(2) by rule to show cause brought by the party in whose favor a judgment is *117 rendered against the party cast in judgment for the purpose of determining the amount of the expert fees to be paid by the party cast in judgment, which rule upon being made absolute by the trial court shall form a part of the final judgment in the cause. As amended Acts 1960, No. 114, § 1.
C. In either manner provided in Subsection B, the court shall also determine and tax as costs, to be paid by the party cast in judgment, the reasonable and necessary cost of medical reports and copies of hospital records.
Added by Acts 1980, No. 618, § 1.
D. In all civil cases in which the trial court, on its own motion or on motion of a party, has appointed a person who is registered as a professional land surveyor, pursuant to R.S. 37:693(B)(4), to be called as an expert to assist it in the adjudication of any case in which professional land surveying skills may aid the court, the court shall make arrangements for the timely payment of reasonable and customary fees for the services sought to be rendered."
A witness who testified as an expert in a trial is entitled to additional compensation fixed with reference to the value of time employed and the degree of learning or skill required. Such an expert is entitled to reasonable compensation for his court appearance and for his preparatory work. On the basis of this criteria the trial court has the authority to fix expert fees either by rule or from testimony adduced at trial. Coon v. Placid Oil Co., 493 So.2d 1236 (La.App.3d Cir.), writ denied, 497 So.2d 1002 (La.1986).
Defendants complain that a medical expert witness fee of only $300 was awarded for Dr. Bernard, while $800 each was awarded for Dr. Domingue and Dr. Barrios.
The trial court apparently fixed the expert witness fees upon plaintiff's rule to set expert witness fees and costs, in accordance with LSA-R.S. 13:3666. Defendants contend that this rule was subsequently set aside and never tried. There is nothing in the record to support this contention except the fact that the transcript of the rule is not in the record either. However, whether or not the rule was tried is immaterial. There is sufficient evidence in the trial record from which to review the reasonableness of the fees awarded. See Stahl v. Sazer, 141 So.2d 441 (La.App. 4th Cir.1962). Moreover, the trial court need not set the fees upon a rule, but may do so in the judgment upon consideration of the testimony adduced at trial of the case. LSA-R.S. 13:3666(B)(1); Coon v. Placid Oil Co., supra. We find that the record does not disclose any abuse of the trial court's great discretion in fixing the amount of the expert witness fees.
Finally, defendants argue that the judgment signed by the trial judge was not presented to defense counsel for approval. Defendants have cited no authority for the proposition that such a submission is required, and we have found none. This contention lacks merit.

DECREE
For the reasons discussed, the judgment of the trial court is affirmed. Costs of this appeal are assessed to defendants-appellants.
AFFIRMED.