YELVERTON, Judge.
American Wholesale Jewelers, Inc., victim of a burglary, sought recovery of its loss in a suit in tort against the Acadia Parish Sheriffs Department and South Central Bell Telephone Company. The suit against the sheriff was based on the alleged tortious violation of his duty to respond to a burglar alarm. The suit against the telephone company was based on its alleged tortious interference with the official operation of the sheriffs department by inducing it not to respond to the alarm. The case against the sheriff was tried by the district judge. The case against the telephone company was tried by a jury. Both decisions were against plaintiff and plaintiff appeals. We affirm, finding in each case that plaintiff failed to prove the threshold requirement that defendant’s conduct was a cause in fact of its loss.
The judge and the jury were presented with all the known facts. At some time during the night of February 22, 1981, the business of American Wholesale Jewelers, located just north of the city limits of Crowley, Acadia Parish, Louisiana, was burglarized, the vault was cut open with a torch, and its valuables stolen. The burglars have never been caught or identified, and little is known of how the crime was done except that it was obviously well-planned, with the thieves cutting several telephone cables in Crowley, causing false burglar alarms across the city, and causing the loss of electronic contact between the sheriff’s office and many alarm systems connected to it. The time of night when the actual burglary of plaintiff’s business occurred is unknown; it was not before 9:02 P.M. on February 22, for that was when an alarm from the business appeared on the sounding board at the sheriff’s office, nor was it after 8:00 o’clock A.M. the next day, for that was when its owner discovered that the burglary had occurred.
The plaintiff’s office was equipped with a burglar alarm system which was composed of three major elements: a local alarm at the plaintiff’s premises, a sounding board at the sheriffs department, and a system of cables which connected the local alarm to the sounding board.
The local alarm was controlled by a central box, which triggered an alarm bell at the premises whenever the magnetic contacts were broken on either a door to the inside vault or the entrance doors to the building, or whenever it received a signal from a heat detector or a motion detector inside the building. On receiving a message from any one of these components, the central box in plaintiffs premises not only triggered the alarm bell, it also sent a signal to the sheriff’s office that its alarm had been triggered.
This signal was transmitted to the sounding board at the sheriffs office by means of what is known as a cable pair, leased by plaintiff from South Central Bell. A break in the cable pair itself would register on the sounding board just as the alarm from the central box. The system was designed *246 to send only one alarm to the sounding board before the system was reset.
The sounding board was located under the radio dispatcher’s desk in the sheriff’s office. Provided free for the sheriff’s convenience, it was tied to every business place in Crowley having a burglar alarm system like plaintiff’s. On the first occurrence only of the triggering of the local alarm, or upon an interruption of power, from whatever cause, in the cable pair, the sounding board gave an audible signal and the name of the business lit up.
The sheriff’s office had no official procedure for monitoring the alarm devices but a procedure had evolved by custom. Upon receipt of an alarm signal the radio dispatcher would note the signal in his log, notify the owner of the premises from which the signal emitted, and dispatch a deputy to the scene, usually by radio. The dispatcher’s radio was connected by a telephone cable to an antenna atop the First National Bank of Crowley.
• The sounding board had indicated a problem at the plaintiff’s premises approximately ten times before February 22, 1981. The customary procedure for responding to an alarm was followed by the sheriff’s department in each instance. Each time the plaintiff’s president, Steve Spallino, would go to the business and rearm the system. All prior alarms were false.
The sounding board became active early on the night of the burglary. Between 8:00 and 9:00 P.M. two alarms, one from the First National Bank of Crowley and the other from Barbin’s Novelty Store, were received and logged. Patrol units responded to the radio dispatch to both places of business and reported false alarms.
Shortly after 9:00 P.M. the sheriff’s radio went out. It was soon determined that the problem was not in the radio, but in the telephone transmission lines, and two repairmen from the telephone company arrived at the sheriff’s office. Right after their arrival, the plaintiff’s alarm appeared on the sounding board, followed closely by another from a private residence. As deputies present prepared to respond to these alarms, one of the telephone repairman said, “Do what you have to do, but in our opinion it’s in the phone lines, being that everything is going off”. The deputies sat down.
It was in the phone lines. Later that night the repairman found a severed cable at 14th and Parkerson Streets. At 5th Avenue and Avenue G they found the sheriff’s radio cable completely severed, and they found the sheriff’s telephone cable, the cable that conveys both telephone and burglar alarm signals, partially severed. The following day a hacksaw with a broken blade was found in the bushes nearby.
An American Wholesale employee, when he arrived at 8:00 A.M. the next morning to open up, found the front door to the business jammed. He immediately notified Steve Spallino, the president of the company. Spallino on his arrival discovered the burglary. The thieves had ripped a hole in the side of the building. The control box which supplies power to the local alarm bell was torn from the wall. The door to the vault had been cut open. The telephone cable (cable pair) was severed just outside the building. The telephone cable across the street was severed in two places. Inventory had been stolen.
On these facts the plaintiff contends that defendants owed duties to it which were breached and that the violations were the cause in fact of its loss. We do not reach the question of whether either of the defendants owed a duty to the plaintiff in this instance, because we find that neither the trial court nor the jury were clearly wrong in their determination that the conduct of neither of these defendants was a cause in fact of plaintiff’s loss.
The initial inquiry in any determination of actionable negligence on the part of a defendant is whether any causal relationship existed between the harm to the plaintiff and the defendant’s allegedly negligent conduct. La.Civil Code art. 2315; Hill v. Lundin and Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Dixie Drive It Yourself System v. American Beverage Co., *247 242 La. 471, 137 So.2d 298 (1962); Ganey v. Beatty, 391 So.2d 545 (La.App. 3rd Cir.1980).
Cause in fact is explained in Dixie Drive It Yourself System, supra, 137 So.2d at page 302, as follows:
“Negligent conduct is a cause-in-fact of harm to another if it was a substantial factor in bringing about that harm.... [T]he negligent conduct is undoubtedly a substantial factor in bringing about the collision if the collision would not have occurred without it. A cause-in-fact is a necessary antecedent. If the collision would have occurred irrespective of the negligence ..., then his negligence was not a substantial factor or cause-in-fact. ...”
And in Ganey v. Beatty, supra, at page 547, it is said:
“To determine cause-in-fact, courts will carefully scrutinize all the evidence, and those acts will be adjudged causes-in-fact when it is found that more probably than not they were necessary ingredients of the accident. Stated otherwise, an act will be deemed a cause-in-fact of an accident only when, viewed in the light of all the evidence, it is concluded that it is a substantial factor without which the accident would not have happened.”
The plaintiff in this case bore a heavy burden of proof. In order to prevail, he had to prove that had the deputies responded to the alarm, the burglary would not have occurred. Proof of the time of the burglary was practically essential to establishing cause in fact. The plaintiff could not prove the time. Because of the proliferation of false alarms throughout the city, the cause at first unsuspectingly being attributed to some innocent problem “in the line” and not human intervention, it is unlikely that an investigation or notice to the owner would have prevented the burglary. It appears that this was a carefully planned burglary, with the likelihood that the burglars cut telephone cables either to prevent alarms or set off false ones and create mass confusion, and that they then lay in wait until the crime could be accomplished in safety. If indeed this was the way the burglary was done, there is no telling at what time of the night it actually occurred. Even assuming that a duty was owed by either defendant, as alleged, what is lacking in the proof is a relationship between the response to the alarm and prevention of the burglary. For us to find that relationship on these facts would require too much speculation as to what may have happened after a response was made to the alarm, and too many assumptions that cannot be reasonably inferred from the facts — for example, we would have to assume that the burglary would have been in progress at exactly the time the deputies went to investigate or, if not, that the owner, knowing of the numerous false alarms going off in the city, would nevertheless have taken the precaution to stay on guard throughout the night, or that the deliberate cutting of the cable pairs was discovered before the burglary actually took place. We are not justified in making these assumptions; we would be equally justified on the facts to assume that the burglars lay in wait until it was safe, and that the sheriff, had he immediately responded to the call, would have seen nothing untoward and, remembering the history of false alarms, and thinking that this, too, was a false alarm, would have gone back to his office without notifying the owner, or that the owner, had he been notified, upon arriving at his business and discovering nothing amiss, and being aware of the false alarms throughout the city, his apprehensions allayed, would have gone back home to bed, leaving the place, its alarms dead, unprotected. In short, the nature of the case leaves too many possibilities for us to say that either the trial judge or the jury was clearly wrong in failing to attribute to a mere possibility the characterization that it was more probable than not. For these reasons we agree with the triers of fact that the plaintiff has failed to prove cause in fact.
Besides the question of the defendant’s duty which, for the reasons we have earlier explained, we pretermit in favor of our determination that the plaintiff has failed *248 to meet the threshold requirement of proof of cause in fact, plaintiff has argued other issues concerning alleged procedural errors made by the trial court. Since we find that a ruling favorable to plaintiff on appeal on these issues would not alter the outcome of the case, we find it unnecessary to discuss these remaining issues.
For the foregoing reasons, the judgment of the trial court is affirmed, with appellant to pay the costs both in the trial court and on appeal.
AFFIRMED.