505 So.2d 993 (1987)
Edward C. AUCOIN, Sr., Plaintiff-Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and Karl Caswell, Defendants-Appellees.
No. 86-369.
Court of Appeal of Louisiana, Third Circuit.
April 8, 1987.
Rehearing Denied April 29, 1987.
*994 Steven Beverung, Lake Charles, for plaintiff-appellant.
Stockwell and Assoc., Bernard H. McLaughlin, Jr., Lake Charles, for defendants-appellees.
Before DOMENGEAUX, GUIDRY and STOKER, JJ.
STOKER, Judge.
This is an action for personal injuries, arising out of an automobile accident, instituted *995 by plaintiff, Edward C. Aucoin, Sr. (Aucoin), against Karl Caswell (Caswell), and his insurer, State Farm Mutual Automobile Insurance Company (State Farm). After a trial on the merits, the jury returned a verdict finding Aucoin and Caswell to be equally at fault in causing the accident and awarding Aucoin the sum of $100 for his special and general damages. This jury verdict was made the judgment of the trial court. It is this judgment which the plaintiff has appealed.
The issues presented by the plaintiff for review are:
(1) Whether the trial court erred as a matter of law and fact in finding plaintiff to be 50% at fault in causing the accident; and
(2) Whether the award of $100 for special and general damages was so grossly inadequate as to constitute an abuse of the "much discretion" of the trier of fact.
We reverse the judgment in part, amend in part, and affirm the judgment as amended.

FACTS
On January 6, 1984, at approximately 10:30 A.M., Aucoin and Caswell were involved in an automobile accident at the intersection of Bunker Hill Road and Birdnest Road in Calcasieu Parish. The two roads form a "T" intersection. Bunker Hill Road runs in a north-south direction. Birdnest Road runs in an east-west direction until it reaches Bunker Hill Road on its east side. Birdnest does not continue west from the intersection. However, a name change takes place at the "T" intersection, and north of the intersection, what would ordinarily be a continuation of Bunker Hill Road, is designated as Birdnest Road. Regardless of the name change, the physical arrangement is simply that of an east-west road which ends at the "T" junction with a continuous north-south road.
Caswell was traveling south on the north-south road and intended to make a left (east) turn into the east-west road. Aucoin was traveling west on the east-west road and intended to turn right (north) into the north-south road. There is a stop sign facing the traffic traveling west on the east-west road, the north-south traffic being favored. The accident occurred in the right lane of the east-west road just past the stop sign. Caswell, attempting to turn left at the intersection, cut the corner too sharp and collided head-on with Aucoin who was preparing to turn right, i.e., north, into the north-south road. Caswell's vehicle suffered moderate damage, but Aucoin's was more heavily damaged. Caswell was issued a traffic citation for his action.
After the accident Aucoin was seen by a doctor in the emergency room of Lake Charles Memorial Hospital. Medications were prescribed and he was released to return home. Aucoin injured his right knee and left shoulder in the accident.

DID THE TRIAL COURT ERR IN FINDING PLAINTIFF TO BE 50% AT FAULT?
The jury determined that Aucoin and Caswell were equally at fault in causing this accident. The verdict form does not state the factual or legal basis that the jury relied on in reaching its conclusion. While the findings of the jury are to be accorded great weight, we find in this case that the jury's determination with respect to the cause of the accident is clearly wrong.
Caswell, as the left turning motorist, should have exercised a higher degree of care in negotiating his turn. Caswell's negligence is further demonstrated by the fact that this accident occurred in Aucoin's lane of travel. LSA-R.S. 32:101(A)(2) provides:
"§ 101. Required position and method of turning at intersections

* * * * * *
"(2) Left turns on two-way roadways. At any intersection where traffic is permitted to move in both directions on each roadway entering the intersection, an approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof and by passing to the right of such center line where it enters the intersection and after entering the intersection the left *996 turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered. Whenever practicable the left turn shall be made in that portion of the intersection to the left of the center of the intersection."
Much is made of the fact that this is an unlined roadway; however, it has two-way traffic and good sense dictates that the presence of at least an imaginary center line be observed.
"Our courts have repeatedly held that to cut a corner or go into an intersection on the wrong side of a highway is gross negligence. See T. Defatta & Sons v. Southwestern Gas & Electric Co., 18 La.App. 452, 138 So. 686 [(1932)]; Gascon v. Rankin, 4 La.App. 269 [(1926)]. Our courts have also placed the burden of proof to show his negligence did not cause the accident upon any driver driving on the wrong side of the highway. Our courts have declared a prima facie case of negligence is made out against the driver of such a car. See Travelers Fire Insurance Co. v. Meadows, La. App., 13 So.2d 537 [(1943)]. Also Miller v. Hayes, La.App., 29 So.2d 396 [(1947)] and Armour & Co., Ltd. v. Hicks Co., Ltd., 18 La.App. 504, 138 So. 676 [(1932)]. Also Codifer v. Occhipinti, La.App., 57 So.2d 697 [(1952)]."

Prioux v. Dressell, 109 So.2d 254, 257, 258 (La.App. 1st Cir.1959).
Caswell has offered no reason or explanation which would justify his being in Aucoin's lane. Aucoin, whether he stopped at the stop sign, came to a rolling stop, or did not stop at all, was proceeding in his proper lane of travel and had not entered the north-south road. The fact that Aucoin may not have observed the stop sign was not the cause of this accident. Had he been attempting to turn left onto the north-south road and been in the middle of the intersection, then it might have been of consequence. However, the situation which confronts this court does not warrant a finding of any negligence on Aucoin's part. Caswell's actions in entering the westbound portion of Birdnest Road on the left side, instead of the right, was the sole and proximate cause of this accident. To have found otherwise was factually and legally incorrect. The jury's verdict in this respect is clearly wrong.

DAMAGES
The jury awarded Aucoin $100 for his special and general damages. This amount was reduced by the proportion of Aucoin's degree of negligence as found by the jury.
In our opinion the jury abused its discretion and made an inadequate award. To make any adjustment in the award we must go through the two-step procedure laid down by our Supreme Court. In Franklin v. Oilfield Heavy Haulers, 478 So.2d 549 (La.App. 3d Cir.1985), we reviewed the Supreme Court's prescribed two-step procedure:
"Under Reck v. Stevens, 373 So.2d 498 (La.1979), upon appellate review we may not disturb an award of general damages made at the trial court level without a finding of clear abuse of discretion and then only after abuse is shown through an articulated analysis and for articulated reasons. If a clear abuse is found, an appellate court may consider awards made in the past but only in the mass of them and not on the basis of selected past awards. This refinement of the rule stems from the holding of Coco v. Winston, 341 So.2d 332 (La.1977) construing the `much discretion' given to the judge or jury by LSA-C.C. art. 1934(3). Under the holding of the latter case, after finding abuse of discretion, an appellate court is limited in raising awards only to the lowest point which is reasonably within the discretion of the trial court, or conversely to reducing an award to the highest point within reasonable discretion of the trial court."
We will first review the medical facts to show that the jury abused its discretion.
The plaintiff alleged that, as a result of the accident, he sustained disabling injuries to his left shoulder and right knee. He visited an orthopedist, Dr. Phillips, approximately ten days after the accident. Plaintiff testified that he was unable to do anything for the week after the accident because the pain necessitated taking painkilling medication. Dr. Phillips found that *997 Aucoin had a good range of motion in his left arm with tenderness on the interior aspect of the left shoulder. The right knee exhibited no abnormal fluid, but there was tenderness. Dr. Phillips diagnosed plaintiff's problems as being a contusion of the right knee and tendonitis of the left shoulder. Plaintiff continued to see Dr. Phillips on a regular basis for the next 18 months.
The plaintiff had seen Dr. Phillips in 1978, complaining of pain in his left shoulder. However, he was not treated again for a shoulder problem until after the accident in January of 1984. Dr. Phillips also saw the plaintiff in 1980 concerning a problem with his right knee. At that time the plaintiff requested that Dr. Phillips assign a disability rating for his knee for VA benefits. The plaintiff told the doctor that he injured his knee during a softball game while he was stationed in France during World War II. Dr. Phillips' diagnosis of the plaintiff's shoulder problem in 1978 was tendonitis and arthritis in the left chromeocavicular [sic] joint. In 1980 he diagnosed the plaintiff's knee problem as arthritis of the right knee and chondromalacia of the patella. These were based on symptoms of pain in the right knee, below the patella, inability to fully extend the knee and swelling in the knee. The prognosis was that these problems would gradually worsen with the passage of time.
In April of 1985 Dr. Phillips estimated the plaintiff's percentage of disability to be 5% of the left shoulder and 10% of the right knee. These figures take into account pain and limited motion in the shoulder, and pain and limited motion in the knee. When asked whether there was anything clinically unusual in the picture presented by the 69-year-old plaintiff, considering his general history of arthritis and tendonitis, Dr. Phillips' impression was that there was nothing unusual.
The plaintiff testified that as a result of his injuries, he was unable to do many of the things that he enjoyed doing prior to the accident. He testified that he could not drive for extended periods of time, could not squat, kneel or climb. Because of the pain and limited use of his shoulder and knee, he was unable to hunt, fish and shrimp as he had previously been able to. Plaintiff said that his left arm had become practically useless and that he could hardly walk due to the pain and restricted motion of his knee. The defendants presented photographs of the plaintiff engaged in various activities which they contended rebutted his claims of disability.
We find that the photographs are indicative of plaintiff's abilities and contradict his testimony. We feel, after review of the plaintiff's testimony, that the plaintiff has exaggerated the degree of his disability. Additionally, there was nothing conclusive in the medical testimony that any disabilities suffered by the plaintiff are a result of injuries sustained in the accident or an aggravation of his preexisting problems. The indications are that the plaintiff's problems are attributable to the natural process of aging in one who already suffers from arthritic conditions. Dr. Phillips testified that he did not observe any injuries after January 1984 that were not there on previous examinations in 1978 and 1980.
In a personal injury suit, the plaintiff bears the burden of proving a causal relationship between the accident and the injuries complained of. The test is whether the plaintiff has shown through medical testimony that more probably than not the subsequent medical treatment was necessitated by trauma suffered in the accident. See Polman v. Mohasco Corp., 371 So.2d 838 (La.App. 4th Cir.1979) and Richard v. Walgreen's Louisiana Co., 476 So.2d 1150 (La.App. 3d Cir.1985). Although the plaintiff in this case failed to prove that the accident caused the tendonitis and arthritis in his left shoulder and arthritis and chondromalacia in his right knee, the evidence does establish that he sustained a slight injury to his left shoulder and right knee. We believe that the plaintiff is entitled to some compensation for these injuries. The jury's award of $100 demonstrated that it found that the plaintiff had sustained some damage, and we agree with that finding. However, the *998 jury's award of $100 is inadequate for special and general damages.
From the foregoing analysis which we have articulated, it is our opinion that the jury did abuse its discretion in awarding only $100 to cover both special and general damages. As we shall show, plaintiff's special damages alone exceed $100.
At this point we will proceed to fix the special damages based on the evidence and will fix the general damages at the lowest figure which was reasonably within the discretion of the jury.
The plaintiff's medical expenses were stipulated to be $644.19. Defendants argue that all of these expenses were not attributable to the injuries caused by the accident. We are unable to discern from the medical testimony when the problems resulting from the accident would have been resolved. We believe that the first two visits made to Dr. Phillips were reasonably related to the treatment of the contusion to the knee and tenderness in the shoulder. We will award the plaintiff the cost for the emergency room services of $70.80, a prescription for Tylenol # 3 for $3.45, and treatment by Dr. Phillips through February 22, 1984 in the amount of $125, for a total of $199.25.
In determining an award for pain and suffering, each injury must be evaluated according to its own peculiar facts and circumstances. Appropriate factors to consider when reviewing a damage award are the severity and duration of the injuries. Richard, supra, at 1153. The jury apparently found that the plaintiff's complaint of pain and disability were greatly exaggerated, and conflicts in his testimony affected his credibility. In light of our finding that one month was a reasonable time within which plaintiff's injuries should have resolved and that the nature of plaintiff's injuries were slight, our determination of an award for pain and suffering will be made in accordance with those findings. We find that an award of $500 in general damages is more appropriate for plaintiff's pain and suffering. Plaintiff testified that he rested in bed for a week after the accident, during which time he took painkilling medication prescribed by the emergency room physician. It is reasonable to believe that he suffered some temporary discomfort resulting from his injuries.
Accordingly, for the reasons stated herein, the judgment of the trial court finding the plaintiff to be 50% at fault is reversed and amended to reflect 100% fault assigned to defendant Caswell; and the award of $100 is amended and increased to $699.25. Costs of this appeal are assessed to defendants.
REVERSED IN PART, AMENDED AND AFFIRMED AS AMENDED.

ON APPLICATION FOR REHEARING
PER CURIAM:
As noted in our opinion on original hearing the jury in this case found plaintiff and defendant, Karl Caswell, to be equally at fault. Plaintiff, Edward C. Aucoin, Sr., was granted recovery on a proportionate basis. The costs in the trial court were assessed equally between the parties, 50% to each. On original hearing we found no fault on the part of the plaintiff and found defendant was 100% at fault. We increased the damage award and applied no proportionate reduction. We assessed the costs of the appeal to this court to the defendants but inadvertently failed to correct the assessment of court costs made in the trial court judgment which assessed the costs on a basis of 50% to each party.
The plaintiff has applied to us for a rehearing on this issue which we deny. However, we recognize the merit of plaintiff's application and make the correction on our own motion. Therefore, our opinion on original hearing is amended to reflect that all costs of this proceeding, both at the trial level and on appeal, are assessed to defendants, Karl Caswell and State Farm Mutual Automobile Insurance Company.