JOHN A. PATIN, Judge Pro Tern.
This is a personal injury suit. Plaintiff-Appellant, Rose Belle Washington, seeks an increase in an award for damages assessed against defendant-appellee, Mary Bellard. Liability is not at issue as it was determined by summary judgment and not raised on this appeal. A jury trial was had on damages issues and an award was rendered in favor of appellant, but not to her liking. She appeals asserting the following assignments of error:
(1) the jury erred in awarding only $10,-000.00 in general damages;
*225 (2) the jury erred in only awarding six months lost wages totaling $3,000.00; and
(3) the jury erred in awarding only $15,-000.00 in medical expenses.
The suit arose out of a rear-end collision on March 10, 1986, in Lafayette, Louisiana. The damage to the vehicles was minimal. Shortly after the accident appellant complained of dizziness and was taken by ambulance to Our Lady of Lourdes Hospital.
On the following day, appellant visited Dr. Milton Jolivette complaining of severe neck and shoulder pain. Dr. Jolivette found muscle spasms in her neck which he attributed to a soft-tissue “whiplash” type injury, presumably caused by the accident. He gave her a soft cervical collar and prescribed certain medicines to control the pain. Over the next three months she returned to Dr. Jolivette with complaints of pain. She was hospitalized under Dr. Joli-vette’s care on three different occasions for a total of eighteen (18) days. The hospitalizations were necessary to find and alleviate the cause of her pain. Dr. Jolivette could find no neurological damage as tests for such were negative.
In May of 1986 Dr. Jolivette referred appellant to Dr. Norman Anseman, a physical therapy specialist, who began doing extensive therapy to aid the healing process. The therapy brought about a marked improvement in her condition. He released her from her last stay in the hospital on May 8, 1986, describing her in his records as being essentially pain free with a full range of motion in her neck and waist. She was still on medication but a normal recovery was predicted.
Dr. Anseman continued to treat appellant until September of 1986. During that time he treated her with therapy for neck and lower back problems, both of which he considered “whiplash” type strains. He discontinued treating her in September because he could no longer find objective reasons for her pain. She was still complaining of pain but he could find no neurological or physiological origin.
In May of 1987, fourteen months after the accident, appellant visited Dr. Robert Rivet, a neurosurgeon, complaining of neck pain, numbness in her hands, and lower back pain. Both Dr. Rivet and Dr. Robert Martinez, a neurologist who also examined her, decided she should undertake therapy again before resorting to surgery. Both doctors concurred in a diagnosis that her neck pain was the result of a pinched nerve brought on by a congenital birth defect. The defect was a fusion of the bones of several vertebrae and a narrowing of the foramen, or the hole through which the injured nerve passed. Another congenital defect evident was scoliosis of the spine which could also have contributed to the pinched nerve. They concluded the numbness in her hands was due to carpal tunnel syndrome.
When therapy failed to give her relief, surgery was performed. In December of 1987, Dr. Rivet removed bone from the opening where the pinched nerve ran, widening the hole and easing the pressure. At the same time a carpal tunnel release was done to reliev'e the numbness in her right hand. No surgery was performed on her back as it was agreed the neck problem was more serious and less responsive to therapy.
After the surgery appellant showed immediate signs of improvement to her neck and shoulders. She did, however, continue to complain of back problems. Dr. Daniel Hodges, her therapist prior to the surgery, continued to treat her for back pain. He classified the cause as being a degenerative joint problem which is brought about by age and use.
A jury trial was held on the issue of damages only. The trial lasted three days at the end of which the jury made the following award:
(1) $15,000.00 for past and future medical expenses;
(2) $3,000.00 for past and future lost wages;
(3) $10,000.00 for past and future pain and suffering and loss of enjoyment of life;
(4) $3,000.00 for past and future disability; and
*226 (5) $10,000.00 for general damages.
The total award was $41,000.00.
Appellant seeks an increase in her award for general damages, medical expenses and lost wages. She asserts the nature and extent of her damages were more extensive and demand greater compensation. While these assignments of error appear on first blush to deal solely with quantum, a closer look reveals they are based on allegations of fact finding errors.
The claim of insufficient awards in the present case is centered on a consideration of appellant’s health problems arising more than a year after the accident. We cannot presuppose those problems were considered when the award was made. Thus, a determination of whether or not those injuries should have been included must precede a review of whether or not compensation was just.
Appellant contends that the accident aggravated pre-existing congenital physical defects, more particularly the fused vertebrae and the scoliosis, and caused the symptoms of carpal tunnel syndrome and her lower back pain. In order to recover for these claims she must have proved the causal relationship between the accident and the subsequent injuries. American Motorist Ins. Co. v. American Rent-All, Inc., 579 So.2d 429 (La.1991). She must prove the causal connection by showing that the injuries were more probably than not caused by the accident. Aucoin v. State Farm Mut. Auto. Ins. Co., 505 So.2d 993 (La.App. 3d Cir.1987).
The jury’s award implies they were not convinced this burden was met, only awarding her for the soft-tissue injury to her neck and for six months lost wages. This is a finding of fact. As such it is incumbent upon us to give the jury great deference, reversing only where we determine their findings to be manifestly erroneous, or clearly wrong. Rosell v. Esco, 549 So.2d 840 (La.1989).
Appellant does not directly raise the issue that the jury was manifestly erroneous in its factual findings. She does imply an error when asserting her reasons for an increase in the amount of damages awarded. In order to properly determine if the general damages award was correct we must examine the facts and circumstances of the case. Reck v. Stevens, 373 So.2d 498 (La.1979). We must also examine the facts and evidence to see if lost wages and medical awards were correct for the period in which compensation was required.
What becomes the focal point is whether or not the jury was manifestly erroneous in limiting recovery to the soft tissue injury to appellant’s neck in its award. Appellant must have proved the damages she claimed in order to recover.
The testimony of the various treating physicians is highly important to the resolution of this matter. Appellant rests the majority of her case on the testimony of Dr. Rivet. She contends he testified without contradiction that the surgery he performed on her was more probably than not precipitated by the accident. She contends that the “uncontradicted” testimony of Dr. Rivet is proof sufficient of the causal connection and, as such, a contrary finding by the jury is clearly wrong.
We find, however, the testimony of Dr. Rivet was not uncontradicted as appellant asserts. Dr. Rivet made it clear that the cause of appellant’s pinched nerve was a narrowing of the foramen, or the hole through which the nerve passes. He stated that this narrowing was related to the congenital fusion of certain neck vertebrae and the pain was compounded by degenerative disc disease. How this condition related to the accident was considered by Dr. Rivet strictly in terms of whether or not the accident caused the symptoms to manifest themselves to the extent surgery was required.
In answering the foregoing question, Dr. Rivet was asked to assume that none of the symptoms for which he treated her had manifested themselves prior to the accident. Under this assumption he stated that it is probable the accident aggravated her condition, resulting in surgery. There is evidence in the record, however, which reveals that appellant suffered from neck *227 pain, numbness in the hands and lower back problems way prior to the accident.
Two years before the accident Dr. Joli-vette treated appellant on a few occasions. She complained of pain in her extremities which he concluded was an early manifestation of arthritis. She also visited him complaining of migraine headaches. In fact, on May 7, 1985 she was having headaches with cervical muscle tension and muscle spasms. She had limited range of motion in her neck. At that time he related this problem to stress. The next time he saw her was the day after the accident. Her symptoms were very similar.
Dr. Joseph George was appellant’s family physician for a number of years. Over a period of five years he treated her for headaches which were diagnosed as either migraine or tension and which also resulted in neck pain, numbness in the fingers of both hands, back pain and chest pains. While Dr. George attributed these maladies to various causes, again, one cannot ignore their obvious similarities with appellant’s complaints of May, 1987. A jury certainly could recognize that she suffered similar symptoms, albeit apparently for different causes, long before the accident.
Dr. Rivet also performed a carpal tunnel release on appellant’s right hand. His testimony concurred with that of the other experts in concluding the symptoms of carpal tunnel syndrome would have appeared sooner had this been caused by the trauma of the accident.
As to the back pain, there is ample evidence that appellant had back trouble for some time prior to the accident. Drs. Joli-vette and George recognized her scoliosis and arthritic condition in her earlier visits. Dr. Charles McDaniel, an orthopedic surgeon, concluded that her back problems were mechanical in nature, that is the result of regular use over the years compounding the degenerative effects of arthritis to her discs. Dr. Hodges also concurred in this assessment of her back pain.
The jury’s findings of fact may have been influenced by certain testimony detrimental to appellant’s credibility. Particularly damaging to her veracity is Dr. Anse-man’s testimony that she displayed “functional overlay” during his treatments of her. He explained that functional overlay indicates a person is claiming pain where there exists no physiological basis. He testified that he performed tests on her which are designed to detect functional overlay. Essentially the pains she complained of during the tests were physiologically unrelated to his manipulation of her body. He went on to state at trial that functional overlay indicates a person is either faking pain for some monetary gain or the “pain” is of a psychological origin.
Appellant’s credibility may have suffered from Dr. Rivet’s testimony that on her initial visit she wished not to undergo therapy because her attorney told her she needed to have surgery. According to Dr. Rivet’s testimony she agreed to undergo therapy only after he threatened not to treat her if she refused his recommendations.
Perhaps the most persuasive evidence was the testimony of Dr. Jolivette and Dr. Anseman. Both diagnosed her as suffering from a soft-tissue cervical injury. Both predicted a normal recovery within a reasonable time which Dr. Anseman stated was six months. Dr. Jolivette had released her from his care two months after the accident. Dr. Anseman ceased treating her six months after the accident because he felt that there were no longer any objective reasons for her pain. The foregoing evidence suggests that she was experiencing no physical pain and that she could continue with her life as normal as early as May of 1986 and not later than September of that same year.
All of the testimony was heard by the jury and from this a decision was formulated. There is a fourteen month time span between the accident and the manifestation of the pinched nerve, the carpal tunnel syndrome and the complaint of lower back pain. Drs. Jolivette and Anseman felt that appellant should heal in normal fashion from her soft tissue neck injury. This time was placed at six months by Dr. Anseman. Appellant’s evidence connecting the accident to her later injuries met with much contradiction. Obviously the jury found *228 these alleged injuries unrelated to the accident. We find the factual conclusions to be reasonable and thus no manifest error was committed.
The jury awarded $10,000.00 in general damages. As stated earlier, the jury has much discretion in making such awards. To review it requires that we consider the factual determinations and circumstances to determine whether the award constituted an abuse of this discretion. Reck v. Stevens, 373 So.2d 498 (La.1979).
The jury was able to view appellant in person and make a determination based on the facts and evidence as well as resulting impressions. If they believed that the appellant’s injuries had a six month duration, we cannot say the jury abused its discretion in an award of $10,000.00. It is a figure well within a range that this court considers reasonable.
As to the issue of lost wages, appellant asserts that she was only compensated for six months lost wages when she should have been compensated for eighteen months. Again, we are faced with what appears to be a quantum issue based on fact. For the award to have included the complete period up to the surgery and beyond the jury would have had to conclude the accident caused her to be unemployed the entire time. They apparently determined that the maximum time she was unemployed due to her accident related injuries was six months. Again the evidence reasonably supports this conclusion. Because we find the jury was not clearly wrong in its factual determinations, the only other consideration is whether or not the calculations for six months of lost wages was done correctly.
It was shown at trial that appellant received $111.00 a week as a domestic servant. The award was for six months or twenty-seven (27) weeks, totalling $3,000.00. There was no error in calculation and the award should stand.
The award for medical expenses offers the same problem. Appellant seeks to be compensated for her surgery and subsequent therapy and treatment. The jury apparently felt such treatment was unrelated to the accident produced injuries and excluded it. The jury awarded $15,-000.00 for medical expenses. Included in the award were all the bills accumulated for a six month period. Appellant urges that her 18 days in Our Lady of Lourdes Hospital were not included in the award. The judgment does not break down the medical award to show precisely what was included. However, a review of the record shows that the amount is sufficient.
The judgment of the lower court will be affirmed at the cost of appellant.
AFFIRMED.