619 So.2d 618 (1993)
Theresa Steelman SUDDUTH, Plaintiff-Appellee,
v.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION & DEVELOPMENT, et al., Defendant-Appellant.
No. 92-690.
Court of Appeal of Louisiana, Third Circuit.
May 5, 1993.
Rehearing Denied June 25, 1993.
*620 James Harvey Domengeaux, for Theresa Steelman Sudduth.
John Claiborne Young and Danial C. Vidrine, for State of Louisiana, D.O.T.D. et al.
Robert C. McCall, for Mathilda Jones.
James Edward Diaz Jr. and Chris Gerard Robbins, for Allstate.
Before STOKER and DECUIR, JJ., and CULPEPPER, J. Pro Tem.[*]
WILLIAM A. CULPEPPER, Judge Pro Tem.
This is a suit for damages caused when two automobiles traveling in opposite directions collided head-on in a detour zone at a construction site on U.S. Highway 167, just north of Abbeville.
Theresa Steelman Sudduth, the southbound driver, filed the present suit against (1) State of Louisiana, Department of Transportation and Development (DOTD), (2) H & S Construction Company (H & S), the highway construction contractor, (3) Dorothy S. Jones, the northbound driver, and Jones' insurers, (4) Allstate Insurance Company and (5) State Farm Mutual Automobile Insurance Company. Matilda Jones, a passenger in the northbound vehicle and wife of Claude Jones, also a passenger in the northbound vehicle, who died of injuries received, and Dorothy S. Jones, driver of the northbound vehicle, and Lawrence Jones, a major child of Claude Jones, filed a separate action against only DOTD and H & S. These two suits were consolidated for trial.
Prior to trial, H & S settled with all plaintiffs.
The trial court found DOTD and H & S at fault for creating a situation at the detour zone which posed a risk that northbound motorists would travel into the southbound lane. Simmons was found free of fault. The court assessed 65% fault to DOTD and 35% fault to H & S, and then made the following awards: to Theresa Steelman Sudduth $500,000 in general damages and $501,603.22 in special damages; to Matilda Jones $50,000 in general damages, $150,000 for the death of her husband, Claude Jones, and medical specials, totaling $19,468.20; to Lawrence Jones, son of Claude Jones, $35,000 for the loss of his father; and Dorothy Jones $2,500 in general damages, $50,000 for the loss of her father, Claude Jones, and medical specials, totaling $213. In addition, the trial court stated in its written reasons for judgment that it was awarding $100,000 for the pain and suffering Claude Jones experienced after the accident until his death, and medical specials, totaling $62,354.85, but the judgment signed does not include these awards.
On appeal, these cases have also been consolidated. Although we will discuss the issues in this opinion, we will render a separate judgment in the companion case, Jones v. State of Louisiana, Department of Transportation and Development, 619 So.2d 626 (La.App. 3rd Cir.1993).
Sudduth did not appeal or answer the appeal.
DOTD appeals, contending that the trial court erred: (1) in finding DOTD liable for the accident under either strict liability or negligence; (2) in finding that DOTD had notice of the alleged defects as mandated by LSA-R.S. 9:2800; (3) in failing to find Dorothy Jones, the driver of the northbound *621 automobile, 100% at fault; (4) in its reliance on the depositional testimony of Jabian Trahan, an eyewitness to the accident, that the detour was confusing; and, (5) in its assessment of Theresa Steelman Sudduth's damages.
The Jones family also appealed in their case, contending that the trial court erred in failing to incorporate into its judgment the $100,000 and $62,354.85 awards it discussed in its written reasons for judgment for Claude Jones's pain and suffering and his medical expenses. We amend the judgment to add the $100,000 and the $62,354.85 as requested by the Jones family, and in all other respects, we affirm.

FACTS
The record shows that on September 3, 1988, at approximately 1 p.m. Theresa Steelman Sudduth was traveling south on U.S. Highway 167 in her 1985 Pontiac Sunbird from Lafayette to Abbeville. It was raining and Highway 167 was under construction.
Traveling north on U.S. 167 at the same time was a brown 1984 Oldsmobile. The driver of the Oldsmobile, Dorothy Jones Simmons, her father, Claude Jones, her stepmother, Matilda Jones, and her sister had attended a family member's funeral in Abbeville and were returning to their homes in Texas. The record shows that the Jones vehicle had been going west on La. Highway 14 and mistakenly turned north onto U.S. 167, instead of continuing west on La. Highway 14. The driver of the Jones vehicle testified that when she realized her error, she started looking for a place to turn left and return to La. Highway 14. At a point in the construction detour phase of U.S. 167, approximately 165 feet south of the intersection of U.S. 167 and Alan Lane, the Jones's vehicle crossed the center line and partially entered the southbound lane. Shortly thereafter, the Jones vehicle collided head on with the Sudduth vehicle.
Sudduth, Matilda Jones, and Claude Jones were hospitalized with various injuries they received in the head-on collision. Sudduth received head injuries and abdominal bleeding which required surgery and a hospital stay; her injuries will be detailed later in this opinion. Matilda Jones underwent surgery to repair a broken leg and remained in a cast for approximately nine months. Claude Jones suffered severe throat injuries. He was hospitalized in Louisiana and Texas and died thirty-six (36) days after the accident from infections which were related to the injuries he received in the accident.

DOTD'S LIABILITY
DOTD contends that the trial court erred in finding it liable for the accident under either strict liability or negligence.
When there is evidence before a trier of fact which, upon reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, the appellate court, on review, may not disturb this factual finding in the absence of manifest error. Rosell v. ESCO, 549 So.2d 840 (La. 1989).
The trial court found DOTD negligent. In its argument before us, DOTD argues that it was not liable under either negligence or strict liability. Since the enactment of LSA-R.S. 9:2800, the elements which a plaintiff must prove to recover damages from a public entity defendant based on the defective condition of a roadway are the same whether based on negligence or strict liability. Valet v. City of Hammond, 577 So.2d 155 (La.App. 1st Cir. 1991). The plaintiff must prove under either theory that: (1) the defendant owned or had custody of the thing which caused the damage; (2) the thing was defective in that it created an unreasonable risk of harm to others; (3) the defendant had actual or constructive knowledge of the defect or risk of harm posed thereby and failed to take corrective action within a reasonable time; and, (4) causation. Id.
DOTD argues that the detour zone did not pose an unreasonable risk of harm, that it had no notice, actual or constructive, of the dangerous condition of the detour zone, and that Dorothy Jones Simmons, the *622 driver of the northbound automobile, was solely at fault for the accident.
We cannot say that the trial court's finding that the detour zone was defective or unreasonably dangerous for normal use, was manifestly erroneous. The trial court found that DOTD's negligence created a situation which was confusing to northbound motorists and created a risk that a northbound motorist would not realize that he had only one lane for travel rather than two, one of which was intended for southbound motorists. In reaching this determination the trial court made the following factual determinations in its written reasons for judgment:
"The confusing situation contributed to the precise set of circumstances which resulted in the head on collision between the northbound Simmons vehicle and the southbound Sudduth vehicle. The demonstrative evidence ... provides a helpful visualization of the detour phase and the aspects of the detour upon which this Court bases its finding of negligence. The Court finds that the placement of channelization devices (barrels) created a situation which would lead a northbound motorist to believe that, as long as the barrels were to the driver's left, he was in the proper lane. This was a correct assumption until the end of the channelization when the barrels to the left of the northbound drivers were, in fact, intended to be channeling devices for southbound drivers. The confusion to the northbound driver was compounded by the fact that another two (2) lane roadway, separated from the accident road by a median, was readily apparent. This, together with the configuration of the channeling devices, could easily lead the northbound motorist to believe he was returning to a four (4) lane divided highway, with two (2) lanes being again available to a northbound motorist. The confusion was further perpetrated by what the Court finds to be a clutter of signs in a relatively short distance. Considering the fact that Mrs. Simmons was unfamiliar with the road and the weather conditions were rainy, the combination of misleading channeling devices, and cluttering of signs at a point where the road appeared to be a divided four (4) lane highway caused understandable driver confusion and contributed to the accident.
The Court further finds that the yellow stripping [sic], which would have been hard to see in rainy weather, was, in all probability, not fresh and readily visible. The Court reaches this conclusion because the evidence shows that the line was restriped some time after the accident and the driver did not see a yellow line at the time of the accident."
After carefully reviewing the record, we find that the testimony of the various individuals support the trial court's factual conclusions that DOTD was at fault.
DOTD contends that the trial court erroneously considered the depositional testimony of Jabian Trahan, the only independent eyewitness to the accident, in reaching its conclusion that the detour zone was confusing to northbound motorists. In its written reasons for judgment, the trial court repeated Trahan's testimony that "[h]e saw Mrs. Simmons' face [at the time of the accident] ... and it looked like she thought she belonged ... [in the southbound lane]." Furthermore, the trial court stated:
"Ironically, Mr. Trahan had traveled the same stretch as Mrs. Simmons earlier the same day. Mr. Trahan testified that he found himself doing the exact same thing Mrs. Simmons did, that is, ending up in the wrong lane of travel due to confusion. Fortunately, Mr. Trahan corrected his error without incident."
DOTD argues that it objected to Trahan's testimony at the time of the deposition, and that the trial court ruled the testimony inadmissible.
We have carefully reviewed the record and find that although counsel for H & S objected to parts of Trahan's depositional testimony on the grounds of relevancy, Trahan's deposition was introduced into evidence at the trial without objection from DOTD. Additionally, the record reflects that the trial court never ruled on the objection. *623 Objections to evidence must be made at the time of its offer, and failure to do so will be considered as a waiver of such objection. Thibodeaux v. Western World Ins. Co., 391 So.2d 24 (La.App. 3rd Cir. 1980). In the absence of a timely objection at the time of the offering of Trahan's deposition into evidence at trial and DOTD's failure to pursue a ruling from the trial court on any objections raised in the deposition, we find that DOTD waived any objection it may have. Accordingly, we find that the trial court properly considered Trahan's testimony.
We likewise find no manifest error in the trial court's determination that DOTD knew of the defect and failed to remedy it within a reasonable time. The record conclusively established that DOTD's pre-construction plans called for H & S to place barrels along the center line of this detour zone so that northbound motorists would have been restricted to the right lane past the point of the accident. The evidence further shows that although DOTD employees were at the detour zone daily during the existence of the detour zone, in excess of one year, they never required H & S to comply with the channelization requirements in its pre-construction plan.
DOTD further urges that it had no notice that the detour zone was defective because no other accidents occurred while the detour zone was in place. We recognize that evidence of the absence of other accidents at the same place is relevant as tending to show that a defendant did not have actual or constructive notice of a dangerous condition. Ketcher v. Illinois Central Gulf R. Co., 440 So.2d 805 (La.App. 1st Cir.1983), writs denied, 444 So.2d 1220, 1222 (La.1984). However, DOTD's pre-construction requirement, that channelization devices be placed up to Alan Lane, belies its argument. Had barrels been in place as the construction documents required, Simmons would have been unable to enter the southbound lane before Alan Lane. Thus, the documents generated by DOTD are indicative of its awareness of the need for a more elaborate delineation of the opposing lanes of travel through the detour zone. See, Valet, supra.
Lastly, DOTD contends that the trial court was manifestly erroneous in its conclusion that DOTD's actions and inactions were the cause-in-fact of the accident. When deciding whether particular conduct is a cause-in-fact of another's harm, the focus is on whether the defendant's conduct "had some direct relationship to the accident." American Wholesale Jewelers, Inc. v. American Druggist Ins. Co., 457 So.2d 244 (La.App. 3rd Cir.1984), writ denied, 461 So.2d 316 (La.1984). Dwayne Evans, the plaintiffs' expert in the field of traffic engineering, opined that the configuration of the detour zone was confusing to northbound motorists, because the northbound driver did not know if the highway was a two-lane two-way or a two-lane one-way road. He attributed the confusion to several factors: (1) DOTD's failure to extend the barrels along the center line of the road to Alan Lane; (2) the premature ending of a double yellow line prior to Alan Lane; (3) the inability of a northbound motorist to perceive that there was two-way traffic through the detour zone because the two-way traffic sign, the only warning sign of this nature in the detour, was placed too close to other construction signs; and, (4) the double yellow striping which was in existence was worn and was not clearly visible. Although DOTD's expert in traffic safety engineering and road design, Dr. Daniel S. Turner, expressed opinions which conflicted with Evans's, he nonetheless agreed that the visibility of the yellow striping in place at the time of the accident was less than optimum. He further stated that the confusion presented to a motorist in the detour zone could have contributed to the accident. After carefully reviewing the record, we cannot say that the trial court's determination of the issue of causation adverse to DOTD was clearly wrong.

MRS. SIMMONS'S FAULT
DOTD contends that the trial court erred in its determination that Mrs. Simmons was free from fault.
*624 Elaborating recently on the manifest error doctrine, the Louisiana Supreme Court stated in Stobart v. State of Louisiana, Through Department of Transportation and Development, 617 So.2d 880 (La. 1993), as follows:
"... [T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Nonetheless, this Court has emphasized that `the reviewing court must always keep in mind that "`if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'"'
This court has recognized that `"[t]he reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.'" Thus, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." (Citation omitted.)
The essence of the trial court's determination of fault was its ruling that the roadway and its structures, designed and monitored by DOTD, would give a reasonable driver cause to believe that two-lane one way traffic resumed where the channelization devices, i.e., the barrels, ended, and that the northbound driver could use either lane of travel. This conclusion is supported by the record in the following ways: (1) unlike the beginning of the detour zone where the barrels were placed along the center line, immediately prior to the accident scene the barrels were placed on the left edge of the highway; and, (2) DOTD's pre-construction plans required the placement of barrels in a continuous line throughout the detour phase to indicate to northbound motorists that only the right lane was open to them.
We find DOTD's reference in the concluding paragraph of its brief to the speed of the Jones vehicle (35 mph) in excess of that posted (20 mph) misplaced. The trial court viewed a videotape presentation of a vehicle traveling through the detour zone at both speeds and heard testimony from various witnesses that a speed of 35 mph was not unreasonable for the circumstances. As shown hereinabove, it was the placement of the barrels, not the speed of the Jones vehicle which was the causative factor in this accident. Accordingly, although the speed of the Jones vehicle was in excess of that posted, we cannot say that the trial court was clearly wrong its failure to assess fault to Mrs. Simmons for her violation of the speed limit.
Likewise, we cannot say that the trial court erred in not assessing fault to Mrs. Simmons for her partial presence in the left hand lane at the time of the collision. In making this argument, DOTD relies on LSA-R.S. 32:71 for the proposition that it was improper for Mrs. Simmons to operate her vehicle in the left lane. It further rests its position on interpretive jurisprudence which holds that a person who leaves his own lane and collides with another car in its correct lane of traffic must exculpate himself from fault by explaining his presence in the other lane by clear and convincing evidence. Although the trial court did not make specific reference to this statute and jurisprudence, the trial court's written reasons reflect that it found that Mrs. Simmons explained her *625 presence in the left lane. In her testimony, Mrs. Simmons stated that she thought that she was traveling on a two-lane one way road and that in order to make a left hand turn at Alan Lane she was required to enter the left hand lane. Earlier in this opinion, we found no manifest error in the trial court's determination that DOTD's configuration of the barrels led northbound motorists to perceive that they had returned to a two-lane one way roadway. Under LSA-R.S. 32:71(B)(1) it is proper for motorists on multilane roadways to travel in the left lane to prepare for a left turn at an intersection. Accordingly, we cannot say that the trial court was clearly wrong in not assessing fault to Mrs. Simmons for her presence in the left hand lane at the time of the collision.
Therefore, after carefully reviewing the record in light of the arguments advanced by DOTD, we cannot say that the trial court was clearly wrong in its determination that Mrs. Simmons was not at fault in causing this accident.

SUDDUTH'S DAMAGES
DOTD contends that the trial court was manifestly erroneous in its finding that Sudduth sustained her burden of proving that her injuries were caused by the accident. It restricts its argument to a determination of whether Sudduth proved that she sustained residual injuries as a result of the accident.
The trial court summarized Sudduth's injuries in its written reasons for judgment, stating:
"The injuries ... sustained by Theresa Steelman Sudduth were severe and some are permanent. She was twenty-three (23) years old at the time of the accident and was enrolled in the nursing program at McNeese State University. Mrs. Sudduth had already completed other academic programs, demonstrating her intellectual capacity to achieve her career goal of becoming a registered nurse. She was engaged at the time of the accident, with a wedding date of a little less than two (2) months after the accident.
The medical evidence shows that Mrs. Sudduth was rendered unconscious as a result of the accident. Her immediate injuries included a cerebral concussion, post traumatic amnesia, internal bleeding, bladder contusion, tears in the abdominal cavity, back injury, and a contusion to her upper body. Abdominal surgery was performed, a facial contusion was sutured, and Mrs. Sudduth remained hospitalized for six (6) days.
Mrs. Sudduth remains under medical care for major problems. She has a long vertical abdominal scar which needs to be alleviated to minimize pain. The scar will probably be very painful during pregnancy. Mrs. Sudduth is in the early stages of pregnancy. Mrs. Sudduth has very substantial problems as a result of her head injury. She has severe headaches, memory and attention problems, personality and emotional problems, and serious cognitive difficulties resulting from organic brain impairment. The Court accepts the testimony of Dr. Aurich regarding the head injuries and their emotional concomitants."
Before an appellate court will alter the quantum award of a trial court, the record must clearly reveal an abuse of the trier of fact's much discretion. Reck v. Stevens, 373 So.2d 498 (La.1979). In a personal injury suit, the plaintiff bears the burden of proving a causal relationship between the accident and the injuries complained of. The test is whether the plaintiff has shown, through medical testimony, that more probably than not the subsequent medical treatment was necessitated by trauma suffered in the accident. Aucoin v. State Farm Mut. Auto. Ins. Co., 505 So.2d 993 (La.App. 3rd Cir.1987). When symptoms of an injury appear shortly after a traumatic incident and are consistent with that incident and continuously worsen, a defendant who contests the cause-in-fact relationship must show some other particular incident could have caused the injury in question to overcome plaintiff's case. Petersen v. State Farm Auto. Ins. Co., 543 So.2d 109 (La.App. 3rd Cir. 1989), writ denied, 546 So.2d 1223 (La. 1989).
*626 In the case sub judice, the trial court heard expert medical testimony on the issue of Sudduth's head injury and the emotional concomitants associated with that injury. Dr. Lynn W. Aurich, a clinical psychologist, testified on Sudduth's behalf, and Dr. John F. Bolter, M.D., a clinical neuropsychologist, for DOTD.
Where the testimony of expert witnesses differs, the trier of fact has great discretion in determining the weight of each. A finding of fact in this regard will not be overturned unless manifest error appears in the record. Green v. State, Southwest Louisiana Charity Hosp., 309 So.2d 706 (La.App. 3rd Cir.1975), writ denied, 313 So.2d 601 (La.1975).
Both experts testified that Sudduth was not a malingerer and she had no problems with cognitive functioning prior to the accident.
They also agreed that Sudduth was unable to return to her work as a paralegal and that she could no longer pursue her nursing degree. Dr. Bolter also agrees that the first set of tests administered by Dr. Aurich, four months post accident, shows that Sudduth had problems which evidenced cognitive deficits. Dr. Aurich's first set of tests showed that Sudduth was in the borderline mental retardation range of intellectual functioning. He opined that these mental problems were caused by the head injury she received in the accident. Dr. Bolter categorized Sudduth's cognitive deficits as being in the moderate range.
However, the two experts disagreed about the test scores Sudduth received when Dr. Aurich re-tested her on February 5, 1991, more than two years after the accident. At that time Sudduth complained of frequent headaches, low back pain, short term memory problems, frequent urination, muscle fasciculation, diminished libido, poor night vision, short attention span, irritability, and difficulties with her sense of smell. When Dr. Aurich tested her at this time, her test scores were even lower. He opined that her worsened scores were the result of worsened psychological functioning associated with her head injury. Dr. Bolter could not agree with this aspect of Dr. Aurich's opinion; instead, he opined that her impairment was the result of emotional problems and not because of severe organic brain damage as stated by Dr. Aurich.
We have carefully reviewed the expert medical testimony and cannot say that the trial court was manifestly erroneous in its choice to rely on Dr. Aurich's medical opinion as opposed to Dr. Bolter's.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the State of Louisiana, Department of Transportation and Development.
AFFIRMED.
NOTES
[*] Judge William A. Culpepper, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.