497 So.2d 753 (1986)
Larry C. GUILLOT, et al., Plaintiffs-Appellants,
v.
Gregory J. SANDOZ, et al., Defendants-Appellees.
No. 85-1238.
Court of Appeal of Louisiana, Third Circuit.
November 5, 1986.
Rehearing Denied December 9, 1986.
Writ Denied January 30, 1987.
*754 S. Gerald Simon, John J. Simon, New Iberia, for plaintiff-appellee-appellant.
L. Hallman Woods, New Iberia, for plaintiff-appellant-appellee.
Ralph W. Stephenson, Jr., Baton Rouge, Gibbens & Blackwell, J. Louis Gibbens, Landry, Watkins and Bonin, Wm. O. Bonin, New Iberia, Mouton, Roy, Carmouche, Bivins, *755 Judice & Henke, Alan K. Breaud, Voorhies and Labbe, James P. Lambert, Lafayette, Brame, Bergstedt & Brame, David Fraser, Lake Charles, for defendants-appellees.
Before DOMENGEAUX, YELVERTON and KNOLL, JJ.
YELVERTON, Judge.
Was the failure of the Louisiana Department of Public Safety to suspend Gregory Sandoz's driver's license the cause-in-fact of an accident which occurred when Sandoz ran a stop sign and hit a truck, killing Sidney Guillot and injuring Alvin Vice? The trial judge found that it was not a cause-in-fact and rendered a judgment in favor of the State, rejecting the demands of the plaintiffs in both these two consolidated lawsuits brought by Alvin Vice and the survivors of Guillot. All plaintiffs appealed this judgment.
Additionally, the plaintiff Vice appealed asking for an increase in the amount of damages awarded him against the other defendants.
We affirm the trial court judgment in both cases as to all issues presented on appeal, for the reasons which we will explain in this opinion, and we today render a separate judgment in the other consolidated case of Vice v. Sandoz, 497 So.2d 757 (La.App. 3rd Cir.1986).
The accident occurred at 6:50 A.M. on April 6, 1982. Sandoz was driving his welding truck south on Hubertville Road in rural Iberia Parish west of Jeanerette. Sidney Guillot was driving his employer's Chevrolet Suburban east on Forty Arpent Road which intersects Hubertville Road. At that intersection there is a stop sign on Hubertville Road but there is no stop sign or warning light on Forty Arpent Road. Sandoz failed to stop at the stop sign and hit the vehicle driven by Guillot. Guillot suffered severe head injuries which caused his death 21 days later. Alvin Vice, a passenger in Guillot's vehicle, was injured.
During the four years before the accident Sandoz was convicted of twelve traffic offenses. He was guilty of several speeding violations, one DWI, and various other moving violations. A Department official testified that Sandoz's license should have been suspended for one year after his ninth conviction in October 1981 under the criteria for determining habitually negligent drivers set forth in LSA-R.S. 32:414 and Department regulations for enforcement of the habitual offender statutes, LSA-R.S. 32:1471, et seq.

CAUSATION
The first step in determining liability under the duty-risk analysis is deciding whether the defendant's conduct is a cause-in-fact of the harm to plaintiff. Pierre v. Allstate Insurance Co., 257 La. 471, 242 So.2d 821 (1970). Defendant's conduct is a cause-in-fact of harm to another if but for its conduct the accident would not have occurred. Edwards v. City of Leesville, 465 So.2d 263 (La.App. 3rd Cir. 1985), writ denied, 467 So.2d 539 (La.1985). The defendant's negligent conduct must be a substantial and necessary antecedent to the harm produced. Prudhomme v. Nationwide Mut. Ins. Co., 465 So.2d 141 (La. App. 3rd Cir.1985), writ denied, 467 So.2d 1132 (La.1985). In the absence of a finding of causation, further consideration as to the conduct of the defendant is both immaterial and unnecessary. Laborde v. Velsicol Chemical Corp., 474 So.2d 1320 (La. App. 3rd Cir.1985), writ denied, 480 So.2d 738 (La.1986).
In the present case the question is whether Sandoz would not have caused an accident if the Department had suspended his driver's license. Plaintiffs-appellants first argue that under the language of the Motor Vehicle Habitual Offender Law, LSA-R.S. 32:1471(2), Sandoz has by his conduct and traffic record demonstrated such "indifference to the safety and welfare of others and ... disrespect for the laws of this state", that he should have been adjudicated an habitual offender and his license suspended. Then almost in the same breath, plaintiffs-appellants argue that had Sandoz's license been suspended, *756 he would have obeyed the law and would have voluntarily refrained from driving without a license. Plaintiffs-appellants cannot have it both ways.
To support their argument plaintiffs use Sandoz's testimony that he voluntarily turned in his license after the accident and did not drive after that. We fail to understand how these actions, taken only after he had fatally injured Mr. Guillot, support the contention that Sandoz would not have driven under suspension before the accident. A more plausible inference is either that Sandoz was thoroughly shaken by the seriousness of the accident that he caused, or that he surrendered his license on the advice of his attorney.
In his written reasons for judgment the trial judge noted that he had tried many cases involving defendants with suspended licenses who had been driving without a license. Plaintiffs-appellants argue that the trial judge erred in considering evidence not in the record and not a proper subject for judicial notice. We disagree, because we find that the trial judge was simply citing an example of a fact in evidence, and one that is also properly considered under the doctrine of judicial notice: that there is nothing to prevent a driver who is under suspension from driving if he chooses to do so. Had the State been required by LSA-R.S. 32:1471 et seq., or R.S. 32:414, to imprison or otherwise physically restrain Gregory Sandoz after his ninth traffic conviction, there might be something to the argument that the failure to do so was a "but for" cause of the accident. But such is not the case.
Nor can we agree with the argument that it must be assumed that people, and in particular Sandoz, will obey the law. Cause-in-fact is purely an issue of fact and the trial judge may draw such inferences from the evidence presented as are in accordance with logic and experience. His determination of factual issues is entitled to great weight and cannot be disturbed unless clearly wrong. Charles v. Durand, 442 So.2d 916 (La.App. 3rd Cir.1983). The trial judge obviously considered Sandoz's dismal traffic record and concluded that the Department's failure to suspend his license was not a substantial factor or necessary antecedent without which the accident would not have happened. We find no error in that conclusion.
We affirm the judgment of the trial court. Because we find no liability, it is unnecessary to address the assignment of error urging that we assign comparative fault.

ALVIN VICE'S DAMAGES
Alvin Vice was 55 years old at the time of the accident. He had worked as a semi-skilled manual laborer in the construction trade for 36 years and his employer stated that he could probably have worked another ten years before retirement. He had not worked from the time of the accident until the time of trial.
At trial Mr. Vice sought general damages for injuries to his neck, left shoulder, back, and chest, and for loss of hearing and brain damage which he attributed to the accident. The trial judge in his written reasons thoroughly analyzed and discussed the testimony of various doctors who saw and treated Vice for his injuries and we here quote his conclusions:
"The Court finds that Vice has proven by this evidence that he sustained soft tissue injuries, including a possible cervical sprain, and was at least temporarily disabled from returning to work. However, the evidence does not support his other claims.
"Vice sought to prove physiological damage to the chest, neck and back. A diagnosis of cervical sprain and soft tissue injuries was made. However, beyond the early evidence of abrasions and contusions that have since resolved, there is no objective evidence of continuing or permanent impairment.
"While the evidence reveals that Vice did indeed suffer a hearing loss it also reveals that the accident was just one of many possible causes. Vice's original treating physician, Dr. Domingue, did not note any *757 evidence of a head injury on the day of the accident. Therefore, the Court finds that Vice has not proven that the accident more probably than not caused the loss.
"Finally, Vice sought to prove organic brain damages as the basis for a battery of alleged emotional and personality changes. However, there simply is not enough evidence to tie Aurich's finding of intellectual deficiencies to the accident. Vice may have suffered an acceleration injury during the wreck or he may not have. There is no proof that he suffered any direct blow which could otherwise have caused the injury. None of the physicians who examined him made a diagnosis of organic brain damage. His life history does not suggest that he necessarily has suffered any decrease in intellectual ability. His formal schooling ended with fifth grade and he experienced substantial difficulty in reaching that point. While the record reveals he was able to successfully complete his G.E.D. and to make, apparently, some successful business investments, he has worked his entire life in semi-skilled manual labor jobs. Indeed, the evidence suggests that he has suffered depression which might instead be the cause of the alleged memory problems and personality changes."
The trial judge concluded that Vice had suffered only soft tissue injuries and awarded him $6,000 in general damages and the stipulated medical expenses of $15,763.93. The court decided that the plaintiff had failed to prove that he was disabled at the time of trial, and no award was made for future loss of wages. Because Vice had not worked for the period between the accident and trial, and noting a conflict in the medical testimony as to when he could return to work, the trial judge awarded him $58,639.98 in lost wages. The total award was $80,403.91.
The initial inquiry in determining whether an award of damages is inadequate or excessive must always be directed to whether the trial court's award for particular injuries and their effects upon the particular injured person was a clear abuse of the trier of fact's "much discretion" in awarding damages. Reck v. Stevens, 373 So.2d 498 (La.1979). After reading the record and the trial judge's analysis of the testimony, we cannot say that the trial court abused its discretion. While the $6,000 award for pain and suffering may be in the low range, we cannot say that it is so inadequate as to amount to an abuse of discretion.
For the foregoing reasons, the judgment of the trial court is affirmed, the plaintiffs to pay the costs of this appeal.
AFFIRMED.