527 So.2d 568 (1988)
Carla Faye GOTRO, Plaintiff-Appellant-Appellee,
v.
The TOWN OF MELVILLE, et al., Defendants-Appellees-Appellants.
No. 87-493.
Court of Appeal of Louisiana, Third Circuit.
June 22, 1988.
*569 Preston N. Aucoin, Ville Platte, for plaintiff/appellant/appellee.
Brinkhaus, Dauzat & Falgoust, Jerry J. Falgoust, Guglielmo, Lopez & Tuttle, H. Douglas Hunter, Opelousas, for defendants/appellees/appellants.
Before DOUCET, YELVERTON and KNOLL, JJ.
KNOLL, Judge.
Carla Gotro (Gotro) filed this suit against The Town of Melville (Melville), its sewer contractor, Mar-Len of Louisiana, Inc. (Mar-Len), and Mar-Len's insurer, United States Fidelity and Guaranty Company (USF & G), seeking damages for personal injuries she received when a pickup truck she was driving struck a rut which extended across a street in Melville. Melville filed a third-party demand against Mar-Len and USF & G seeking contribution and/or indemnity. In a bench trial, the court found Melville liable to Gotro under strict liability, and found Gotro 50% at fault; the court awarded her $10,000 in general damages, $9,031.33 for medical expenses, and reduced her recovery by 50%. Melville's third-party demand was dismissed with prejudice.
Gotro appeals contending the trial court erred: (1) in failing to find Mar-Len and its insurer, USF & G, liable with Melville; (2) in holding that Gotro was 50% comparatively negligent; and, (3) in awarding an inadequate amount of damages.
Melville also brings this appeal contending that the trial court erred in dismissing its claims against Mar-Len and USF & G. We affirm.

FACTS
Gotro initiated this action for personal injuries arising out of a one vehicle accident which occurred within the corporate limits of Melville on April 24, 1985. At approximately 1:30-2:00 p.m. on a clear day, Gotro's pickup truck struck a rut which extended the full width of Gum Street. Prior to the accident, Mar-Len had contracted with Melville to perform sewer line construction within the corporate limits. The contract provided that the sewer contractor would indemnify and hold harmless Melville from and against all claims, damages, losses, and expenses arising out of or resulting from the performance of the sewer contract.
Melville, Mar-Len and USF & G answered Gotro's petition, denying liability and pleaded the affirmative defense that Gotro was contributory negligent. Melville's third-party demand against Mar-Len and USF & G for contribution and/or indemnity was predicated on the contractual obligations between them.

*570 MAR-LEN'S LIABILITY
For greatly divergent reasons, Gotro and Melville contend that Mar-Len and USF & G are liable. Gotro urges that Mar-Len's actions made it liable in solido with Melville. On the other hand, Melville argues that if it is liable, then under Dusenbery v. McMoRan Exploration Company, 458 So. 2d 102 (La.1984), it has a right, as a party who is responsible to Gotro because of strict liability, to seek indemnification and/or contribution from Mar-Len because Mar-Len is the party whose active fault caused the dangerous condition, the rut. Accordingly, they both argue that the trial court erred in failing to find that Mar-Len created the rut during its sewer construction work.
In the trial court's written reasons for judgment, it stated that there was not a preponderance of the evidence that the particular rut which caused Gotro's accident was attributable to Mar-Len.
The standard of appellate review is well settled in the jurisprudence of Louisiana: The factual conclusions of the trier of fact are entitled to great weight and should not be disturbed by the reviewing court unless clearly erroneous. If there is conflict in the testimony, reasonable inferences of credibility and reasonable inferences of fact should not be disturbed even though the appellate court may feel that its own evaluations and inferences are as reasonable. Bray v. Isbell, 458 So.2d 594 (La. App. 3rd Cir.1984), writ denied, 462 So.2d 210 (La.1985). The rationale for this well settled principle is based not only upon the trial court's better capacity to evaluate live witnesses, but also upon the proper allocation of trial and appellate functions between the respective courts. Canter v. Koehring Co., 283 So.2d 716 (La.1973).
In the case subjudice Melville and Gotro admit that no one witnessed the making of the rut in question. Accordingly, there is no affirmative evidence showing the cause of the unreasonably dangerous condition. The evidence on this issue is totally circumstantial.
The evidence preponderates that the sewer work Mar-Len performed was across the street from the scene of the accident. Mar-Len did not provide a sewer connection across Gum Street at the point of the accident because this was the site of a graveyard where no service connections were required.
Melville and Gotro contend that Mar-Len excavated the steet to repair a water line it broke while working on Gum Street; they argue that this repair work required Mar-Len to either cut across Gum Street or the heavy machinery used to repair the water line broke the street and caused the rut when it repaired the water line. The referenced water line break occurred approximately sixteen months prior to the accident in question. Mar-Len's supervisory personnel testified that the repair of the water line did not require them to cut across Gum Street, and the machinery it used did not damage the opposite side of Gum Steet, i.e., where the accident occurred.
Just prior to the sewer project, Melville undertook gas and water line work on Gum Street which was performed on the same side of the street as the accident. The work necessitated cutting service lines across Gum Street to serve the residence located across from the cemetery. Melville presented evidence to show that prior to the sewer work the streets were pothole free; after Mar-Len's sewer work, potholes appeared.
The trial court concluded that the circumstantial evidence was insufficient to tip the balance in Melville and Gotro's favor concerning the issue of Mar-Len's liability. After thoroughly reviewing the record, we can not say that the trial court was clearly wrong in its determination that Mar-Len was not responsible for the rut which caused Gotro's accident.

ALLOCATION OF FAULT
Gotro contends that the trial court erred in allocating her with 50% fault in causing the accident.
If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another, the amount of damages *571 recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss. LSA-C.C. Art. 2323. In the allocation of comparative fault, the trial court must consider both the nature and conduct of each party at fault and the extent of causal relationship between the conduct and the damages. Attales v. Shelter Mut. Ins. Co., 488 So.2d 474 (La.App. 3rd Cir.1986). Since a trial court's findings as to percentages of fault are factual, they will not be disturbed unless clearly wrong. See Stein v. Langer, 515 So.2d 507 (La. App. 1st Cir.1987).
In the case sub judice Gotro had been a resident of Melville for approximately eight years, was familiar with the construction work in progress on the streets, and admitted traveling Gum Street two to three days a week prior to the accident. The accident occurred during daylight hours, and there was no evidence that the rut, which Gotro described as "a big pothole [which] crumbled all the way across the road", was not visible. Notwithstanding this knowledge, Gotro testified that at the time of the accident she was traveling on Gum Street at a speed of between 10 and 15 m.p.h. After a complete review of the record, we find that the trial court's allocation of 50% fault to Gotro was well within the much discretion allowed the trier of fact.

QUANTUM
Gotro next contends that the trial court's general damage award was inadequate, and that it failed to articulate its analysis of the facts used to arrive at its $10,000 award. We disagree.
An award of damages may be disturbed on appeal only when the record clearly reveals an abuse of the great discretion accorded the trier of fact in making the award. Reck v. Stevens, 373 So.2d 498 (La.1979).
Gotro testified that when her pickup truck struck the rut, her head hit the window on the driver's side of the vehicle and she felt tightness in the neck. On the day following the accident she consulted Dr. Charles Aswell, her family physician. Dr. Aswell found spasm in the neck, the right upper shoulder and the right side of the upper back. He prescribed a neck brace and muscle relaxants, and gave her a cortisone injection. On April 29, 1985, he placed her in traction in Humana HospitalVille Platte because of her continued complaints of pain. He prescribed muscle relaxants and ordered physical therapy. He suspected a cervical disc injury despite the negative results of the X-rays and a CAT scan of the cervical and lumbar spine taken in connection with her hospitalization. He rehospitalized her in July because she was experiencing greater neck pain and headaches. He testified that he was still treating her, that she was still symptomatic, and needed a myelogram.
On December 3, 1985, Gotro was examined by Dr. Henry J. Dupre, a general practitioner. He opined that she suffered a significant cervical strain or whiplash injury with soft tissue injuries to her neck and upper back, and that she was suffering from myofasial pain syndrome. His prognosis was that her problems would continue for 12 to 18 months, and possibly for 2 years.
Dr. Frederick L. Mayer, an orthopaedic specialist, examined Gotro on January 27, 1986, approximately 9 months after the accident. At that time she complained of soreness and stiffness in the neck, occasional headaches, tightness in the arms, and intermittent pain and weakness in the right arm. Dr. Mayer's examination of the cervical spine revealed a mild decreased range of motion, flexion, and extension, and, right and lateral tilting. He opined that she suffered a soft tissue injury consisting of both a cervical strain and a lumbar strain. However, because of her continued complaints of pain, he also recommended that she undergo a cervical myelogram even though he did not feel that she had suffered a herniated disc. His prognosis was that her injury to the cervical region should resolve itself within one year.
In light of the fact that the trial court could have concluded that Gotro suffered a soft tissue injury, for which the *572 prognosis for recovery was good, we can not say that the damage award is inadequate or a clear abuse of the trier of fact's much discretion. On this basis we find Gotro's reliance on Pepperdine v. South La. Contractors, Inc., 486 So.2d 317 (La. App. 3rd Cir.1986), distinguishable because in that case the trial court could have found that the plaintiff suffered a herniated disc.

USF & G'S SCOPE OF INSURANCE COVERAGE
Melville contends that it was an additional insured under Mar-Len's insurance contract with USF & G. Melville argues that since it entered into an incidental contract with Mar-Len then USF & G automatically insured Melville even though the town was not listed as an additional insured in the insurance contract. We disagree.
Melville's contract with Mar-Len and the provision which required Mar-Len to carry public liability insurance was to protect Melville from claims which may arise out of, or result from, Mar-Len's performance of the sewer work. For the reasons aforestated, Melville failed to establish that Gotro's accident arose out of Mar-Len's performance of the sewer contract.
As we appreciate Melville's argument, simply because it entered into this contract with Mar-Len to perform sewer work, any accident which occurred on Melville's streets where sewer work was performed, made it an additional insured under USF & G's insurance policy with Mar-Len. We have examined USF & G's policy of insurance and fail to find where the policy language broadens liability coverage to the extent urged. Accordingly, we find no error in the trial court's determination.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed one-half to Gotro, and one-half to Melville.
AFFIRMED.