hKNOLL, Judge.
This tort claim involves an accident which occurred when Steve Rollins’ Datsun pickup truck struck potholes on Rollins Road, went out of control, and flipped over. The trial court cast the Evangeline Parish Police Jury (Evangeline Parish), the owner of the road, with 75% fault and Rollins with 25%. It also awarded Rollins $60,000 damages, general and special, and $5,000 to his wife for loss of consortium.
Evangeline Parish appeals, contending that the trial court erred: (1) in finding it liable for Rollins’ accident; (2) alternatively, in its assessment of fault; and, (3) in finding causation between Rollins’ accident and his carpal tunnel syndrome. We affirm the finding of liability, amend the trial court’s allocation of fault, and affirm the trial court’s quantum award.
FACTS
On April 27, 1992, Jimmy Dicks, a deputy of the Evangeline Parish Sheriff’s Office, was dispatched to Rollins Road to compile an incident report which involved a one vehicle accident Steve Rollins had two weeks earlier at approximately 10:30 p.m. on April 13, 1992. Deputy Dicks reported that Rollins lost control of his 1975 Datsun truck on Rollins Road when he struck a set of potholes 12while travelling west at approximately 40-45 mph. Rollins reported to Dicks that his truck then flipped onto its side when it struck a second set of holes, skidded along the iron fence in front of Morein’s cattle pen, and came to a halt 65 feet farther down in the ditch. The truck’s final resting position was on its side (driver side down) perpendicular to the road.
Rollins testified that he crawled out through the passenger window and righted his truck. Shortly afterwards, Brandon Granger, a seventeen year old, crossed the accident scene. Granger was concerned because Rollins’ truck blocked a large part of the road; he testified that he hooked a rope onto the truck’s back bumper and pulled it so that it was parallel to the road. Granger then gave Rollins a ride to Kenneth Clark’s house. Clark testified that he and his wife drove Rollins back to the wrecked truck, hooked a chain to the truck, and pulled it to Rollins’ home.
EVANGELINE PARISH’S LIABILITY
Evangeline Parish first contends that the trial court erred in finding it liable for Rollins’ accident. It argues that Rollins failed to prove by a preponderance of the evidence that he sustained an accident and refers us to inconsistent testimony of Rollins and the corroborating witnesses.[1]
In particular, Evangeline Parish asserts that there were varying descriptions of: (1) whether Rollins or Clark righted Rollins’ truck after the accident; (2) whether the pot holes were repaired two days after the accident or more than two weeks later; (3) why Rollins waited two weeks to report the acci *434 dent; (4) whether Rollins’ truck skidded on its side before hitting the ditch; (5) whether the truck struck the iron fence at Morein’s cattle pen; and, (6) whether the pot holes on Rollins Road could have warped the front rims of Rollins’ truck.
The Louisiana Supreme Court in Stobart v. State Through DOTD, 617 So.2d 880, 882-883 (La.1993), stated:
la“A court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of ‘manifest error’ or unless it is ‘clearly wrong.’ This court has announced a two-part test for the reversal of a fact-finder’s determinations:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court’s finding. The reviewing court must review the record in its entirety to determine whether the trial court’s finding was clearly wrong or manifestly erroneous.
Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. However, where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness’s story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Nonetheless, this Court has emphasized that ‘the reviewing court must always keep in mind that “if the trial court or jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” ’
This court has recognized that ‘[t]he reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.’ Thus, where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.” (Citations omitted.)
In the case sub judice, the strongest argument made by Evangeline Parish is that Rollins waited approximately two weeks to I ¿report that he had been involved in an accident. Rollins’ explanation for this delay was that even though he was not hospitalized, the pain of his injuries prevented him from reporting the accident.
Although Evangeline Parish persuasively contends otherwise and asserts that Rollins’ dilatoriness supported its contention that there was no accident, Stobart requires us to review the record as a whole. Notwithstanding Rollins’ delay in reporting the accident and the various inconsistencies of the witnesses, the physical evidence shows that Rollins’ truck did leave the road just beyond the potholes and the testimonies of Clark and Granger, the two witnesses who aided Rollins just after the accident, corroborate that finding. Considering the extent of the potholes across the road and the physical evidence, we cannot say that the trial court was clearly wrong in finding that Rollins had an accident when his vehicle struck the potholes, went out of control, and ultimately overturned in the road.
APPORTIONMENT OF FAULT
Evangeline Parish next contends that the trial court was manifestly erroneous in its apportionment of only 25% fault to Rol *435 lins. In support of its argument it cites Guilbeau v. St. Landry Parish Police Jury, 600 So.2d 859 (La.App. 3 Cir.1992), writ denied, 606 So.2d 544 (La.1992), as a case very similar to the case sub judice, where this court reduced the police jury’s fault from 100% to 50%.
If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss. LSA-C.C. Art. 2323. In the allocation of comparative fault, the trial court must consider both the nature and conduct of each party at fault and the extent of causal relationship between the conduct and the damages. Gotro v. Town of Melville, 527 So.2d 568 (La.App. 3 Cir.1988). Since a trial court’s findings as to percentages of fault are | (¡factual, they will not be disturbed unless clearly wrong. Socorro v. City of New Orleans, 579 So.2d 931 (La.1991).
As stated in Socorro at 942, “In reviewing determinations of proportionate fault, we have previously compared the respective degrees of duty of the various parties and the degree of causation in the parties’ breach of their respective duties.” In the present case, the record shows that Evangeline Parish breached its duty to maintain the road in a reasonably safe condition or to warn of the potholes and advise the motoring public to reduce their speed when approaching this hazard. On the other hand, Rollins lived near the place in the road where the potholes were located for approximately seven years. He admitted driving through these potholes on numerous occasions at a reduced speed and that the potholes had been a recurring problem for many years. Despite Rollins’ knowledge of the condition of this section of road, he testified that he drove through the potholes at an estimated speed of 40-45 mph; the accident reconstructionists, Rollins’ and Evangeline Parish’s, estimated Rollins’ speed between 45 and 60 mph.
Considering Rollins’ knowledge of the potholes on Rollins Road and his previous safe crossings of that potholed section of road at a reduced speed, we find that the trial court abused its discretion in assessing Rollins with only 25% fault. Under these circumstances, we find that the least percentage of fault attributable to Rollins supported by the evidence is 50%. See, Guilbeau, supra, and Gotro, supra. We will amend the trial court judgment accordingly.
DAMAGES FOR CARPAL TUNNEL SYNDROME
Evangeline Parish next contends that the trial court erred in finding that the accident caused Rollins to suffer bilateral carpal tunnel syndrome. In its oral reasons for judgment, the trial court concluded that “the evidence preponderates in favor of the accident being the cause of the plaintiffs bilateral carpal tunnel syndrome.... ”
In a personal injury suit, the plaintiff bears the burden of proving a causal relationship between the accident and the injuries | ¡¡complained of. Aucoin v. State Farm Mut. Auto. Ins. Co., 505 So.2d 993 (La.App. 3 Cir.1987). The test is whether plaintiff has shown through medical testimony that more probably than not the subsequent medical treatment was necessitated by the trauma suffered in the accident. Jaffarzad v. Jones Truck Lines, Inc., 561 So.2d 144 (La.App. 3 Cir.1990), writ denied, 565 So.2d 450 (La.1990).
In the present case, Rollins was examined by four doctors. Dr. Gordon Soileau, a general practitioner, examined Rollins on the day following the accident and intermittently thereafter until March 26, 1993. Although Dr. Soileau treated Rollins for various complaints of pain, he never treated him for carpal tunnel syndrome. Thus, he rendered no opinion on this issue. Dr. Soileau did, however, refer Rollins in late July of 1992 to Dr. Thomas Butaud, an orthopedist.
Dr. Butaud examined Rollins on August 11, 1992. At this first office visit, Rollins complained to Dr. Butaud of pain in his neck and left shoulder as well as headaches and numbness in his arms. Dr. Butaud noted spasms on the left side of Rollins’ neck and reported that he tested positive in both hands for carpal tunnel syndrome. Rollins *436 told Dr. Butaud that his hands began going numb after the accident. Dr. Butaud had Dr. James Domingue, a neurologist, perform EMG and nerve conduction studies; the results were positive for bilateral carpal tunnel syndrome.
In September Dr. Butaud injected both carpal tunnels in an attempt to ease the pain in Rollins’ hands. Nevertheless, on November 18, 1992, Rollins still complained of numbness in the left hand. Dr. Butaud advised Rollins that he could repeat the injections into the carpal tunnels or that he could consider a surgical procedure to release the carpal tunnel. It was Dr. Butaud’s opinion, considering the positive nerve findings, that the most reasonable course of medical treatment was the surgical release of the carpal tunnels.
Dr. Butaud testified that based on the history he received from Rollins, the accident he had on April 14, 1992, could have 17been a causative factor in his development of carpal tunnel syndrome. However, Dr. Butaud candidly tempered his opinion when he was faced with evidence that Rollins had not complained of wrist pain to Dr. Soileau in the initial weeks after the accident. He stated, “An acute episode of ... [carpal tunnel syndrome], no, generally does not take months, no.” Nevertheless, Dr. Butaud also stated, “... I would figure within the first two or three months that if it was related to the accident, it would start showing itself.”
Evangeline Parish had Rollins examined on March 29, 1993, by Dr. Joe Morgan, an orthopedic surgeon. He found a little tenderness at Rollins’ carpal tunnels in both wrists. He opined that if Rollins had no complaints regarding his wrists as of his April 29, 1992, visit to Dr. Soileau that the accident was not the cause of his bilateral carpal tunnel syndrome.
After carefully reviewing the evidence presented, although we may have concluded otherwise, we cannot say that the trial court was clearly wrong in finding that the accident caused Rollins’ bilateral carpal tunnel syndrome. Although Evangeline Parish was able to show that the onset of - Rollins’ wrist pain was not immediately after the accident, there was sufficient medical evidence to establish that the onset of pain was not until after the accident, i.e., this was not an old injury, and Evangeline Parish could point to no other intervening cause of this medical problem.
For the foregoing reasons, we amend the judgment to increase the percentage of fault attributable to Rollins from 25% to 50%, and reduce the damage award accordingly. In all other respects, the judgment of the trial court is affirmed. Costs are assessed one-half to Rollins and one-half to Evangeline Parish.
AFFIRMED AS AMENDED AND RENDERED.

. Evangeline Parish does not dispute that there were pot holes on Rollins Road in the area of the accident site or that these pot holes were a continuing problem for the road crews.