663 So.2d 398 (1995)
Sheila MILLER, Plaintiff-Appellee,
v.
EVANGELINE PARISH POLICE JURY, Defendant-Appellant.
No. 95-566.
Court of Appeal of Louisiana, Third Circuit.
October 11, 1995.
*399 Donald Lynn Mayeux, Eunice, for Sheila Miller.
James L. Pate, Lafayette, for Evangeline Parish Police Jury.
Before KNOLL, THIBODEAUX and DECUIR, JJ.
KNOLL, Judge.
The Evangeline Parish Police Jury (Police Jury) appeals the district court's judgment awarding plaintiffs, Sheila Miller (Sheila) and Chasity Bolfa (Chasity), damages and costs arising out of a single vehicle automobile accident caused by a pothole.
Two suits were filed in the district court as a result of this accident and were consolidated for trial. In one action, Sheila Miller filed suit in her capacity as the guardian of her niece, Chasity, against her insurer, Liberty's *400 Lloyd Insurance Company, and the Evangeline Parish Police Jury. The case was settled with Liberty's Lloyd and trial proceeded only against the Police Jury. The other suit was filed by Sheila Miller, individually, against the Police Jury.
A jointly captioned judgment was rendered by the district court in the consolidated cases. The cases were consolidated for appellate review. Because we have chosen to treat all of the issues raised from both lawsuits in the above-captioned appeal, we will render a separate judgment in the companion appeal involving Sheila Miller's action on behalf of Chasity against the Police Jury.

FACTS
On the night of October 28, 1992, at approximately 6:15 p.m., Sheila and her thirteen year old niece, Chasity, were driving in the westbound lane of Evangeline Parish Road 10-14 when their 1980 Honda Civic struck a pothole. The vehicle flipped and landed on the driver's side door. As a result of the collision, Chasity was thrown from the vehicle's rear window and pinned underneath the Honda while Sheila remained trapped inside. Both Sheila and Chasity sustained significant injuries. Their medical costs were stipulated at trial by all parties. The pothole was located across from the driveway and the home of Michael Launey, who witnessed portions of the accident and also rescued the plaintiffs with the help of an individual from a passing vehicle.
At trial, Sheila testified that she remembered little about the accident other than applying her brakes to avoid a pothole that she perceived was as wide as the front of her car. However, she remembered that it was dark, that she was traveling 35 to 40 m.p.h., and that she did not see the pothole until it was between ten to fifteen feet ahead of her. She also admitted that she was not a good judge of distance. Although she was unsure whether her vehicle swerved to the right into a ditch adjacent to the narrow shoulder of the road before encountering the pothole, she was certain that she could not have avoided the pothole by going around it via the eastbound lane because of approaching traffic.
Chasity also appeared as a witness at trial and related a similar version of the accident. Chasity testified that just before the accident she was looking out of the passenger's side window and did not see the pothole until she heard Sheila cry out "Oh, oh." After seeing the pothole, Chasity braced herself for the collision. Chasity testified that she heard and felt the car impact with the pothole and then, as described in Chasity's own words:
Then we hit it and it made a loud noise and then it felt like we went into a spin and my seat broke. I could feel myself being tossed around the car. I could feel myself hitting things in the car. Then I closed my eyes and I felt like a pressure on my head and then I opened my eyes and I was laying on the road with the car on top of me.
At the time of the accident, Michael Launey testified that visibility was low and reduced to the realm of shadows because of the coming darkness of night. Although Mr. Launey admitted that he did not witness the entirety of the accident because it was dark, he testified that he heard the screech of Sheila's brakes and could see the piercing beams of light emanating from the headlights of a vehicle bouncing amidst the shadows. Mr. Launey also remarked that he was more than familiar with the pothole and its frequent repair history. He stated that it was a regular occurrence for him to hear the screech of brakes and the subsequent "bloop... bloop" sound of passing vehicles as their tires and suspension apparatus encountered and negotiated the pothole across from his driveway and in front of his home. Judging from the sound that Sheila's vehicle made and the bouncing of the headlight beams from her vehicle, Mr. Launey anticipated that there had been a severe accident. He immediately instructed his wife to summon the sheriff's office. Meanwhile, he retrieved a flashlight and left his home to investigate the accident scene.
Mr. Launey found the plaintiff's vehicle overturned and resting on its driver's side door on top of or very close to the pothole. He also discovered Chasity crying for help and pinned underneath the overturned vehicle. With the assistance of an occupant from *401 a vehicle that happened upon the accident scene, Mr. Launey raised the vehicle resting on Chasity, freed her from it, and lifted Sheila out of the overturned vehicle through its passenger side door. Mr. Launey also testified that he searched the accident scene the following day. He discovered 75 feet of skid marks on the road leading into the ditch before the pothole. He also estimated that the pothole was about two and a half feet wide at the time of the accident. He opined that Sheila's vehicle had made these marks.
At approximately 6:35 p.m., Sergeant Vernon Fontenot of the Evangeline Parish Sheriff's Department arrived on the accident scene. He found Sheila's vehicle resting on its side and on top of the pothole. He also saw evidence that her vehicle left the road and traveled 38 feet in the ditch to the right of the westbound lane before returning to the road and striking the pothole. Before Sheila left by ambulance, Sgt. Fontenot questioned her concerning the accident. According to Sgt. Fontenot, Sheila told him that she wrecked her car and that the pothole caused the accident. While questioning Sheila, Sgt. Fontenot thought that Sheila's breath smelled of alcohol, but he did not confirm his suspicion with a breathalyser or blood test. Sgt. Fontenot also remarked that the roads were dry and that it was a dark night.
The district court rendered judgment in favor of the plaintiffs and issued oral reasons for judgment. The district court found that the pothole was in the custody and control of the Police Jury, that the Police Jury knew or should have known about this defective condition in the roadway, and that the pothole was the cause-in-fact of the accident. The district court awarded Sheila a total of $25,800, which included $4,111.19 for medical bills, $800 for property damage to her vehicle, and $20,888.81 in general damages. The district court awarded Chasity a total of $60,000, which included $6,997.00 for medical bills and $53,003.00 in general damages. The district court also cast the defendant with all expert witness fees, court costs, and deposition costs. However, finding that Sheila's own conduct and careless operation of her vehicle contributed to the accident and her injuries, the district court assessed Sheila with 50% of the fault and reduced the plaintiffs' judgment accordingly.

LAW AND DISCUSSION
To recover damages from a public entity, the plaintiff must prove that: (1) the public entity had ownership or control of the thing which caused the damage; (2) the thing was defective in that it created an unreasonable risk of harm; (3) the public entity had actual or constructive knowledge of the defect and failed to take remedial measures within a reasonable time; and, (4) causation. See La.R.S. 9:2800; Sudduth v. State, DOTD, 619 So.2d 618 (La.App. 3 Cir.), writ denied, 629 So.2d 349 (La.1993); Valet v. City of Hammond, 577 So.2d 155 (La.App. 1 Cir.1991). On appeal, the Police Jury argues that the district court committed manifest error when it found that the pothole was a cause-in-fact of the plaintiffs' accident. The Police Jury also asserts that the district court improperly assessed it with 50% fault for the accident.

CAUSATION
The Police Jury contends that the pothole was not a substantial cause of the plaintiffs' accident. The Police Jury strongly urges that Sheila never hit the pothole as she testified she did, and that the trial court erred in accepting her testimony, since the physical evidence clearly shows that her car came to rest very near to or on top of the pothole. The skid marks found on the road and in the ditch by Mr. Launey and Sgt. Fontenot lead to the pothole and are approximately 108 feet long. The Police Jury suggests that Sheila saw the pothole well before coming within ten to fifteen feet of it as she testified, and her own negligence was the sole cause-in-fact of the accident.
Conduct is a cause-in-fact of an injury if it is a substantial factor in bringing about the injury. Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962). Expressed another way, a defendant's conduct is a cause-in-fact of harm to another if but for its conduct the accident would not have occurred. Guillot v. Sandoz, 497 So.2d 753 (La.App. 3 Cir. 1986), writ denied, 501 So.2d 217 (La.1987). *402 In a personal injury suit, the plaintiff bears the burden of proving a casual relationship between the injury sustained and the accident which caused the injury. American Motorist Ins. Co. v. American Rent-All Inc., 579 So.2d 429 (La.1991). Plaintiff must prove causation by a preponderance of the evidence. Morris v. Orleans Parish School Bd., 553 So.2d 427 (La.1989). However, causation is a factual issue to be determined by the fact finder. Cay v. State, DOTD, 93-0887 (La. 1/14/94); 631 So.2d 393. Much deference is accorded the trier of fact on the question of causation. Rick v. State, DOTD, 93-1776, 1784 (La. 1/14/94); 630 So.2d 1271. A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State, through DOTD, 617 So.2d 880 (La.1993).
In the case sub judice, the district court found that the pothole was a substantial cause-in-fact of the accident and injuries suffered by the plaintiffs. After thorough consideration of the record, we find no error in this conclusion. Clearly, but for the pothole, the plaintiffs would not have left the road in an attempt to avoid colliding with it. Although there is some discrepancy as to when Sheila first saw the pothole and as to what point her vehicle left the road and entered the ditch before landing near to or on top of the pothole, there is no doubt that Sheila would not have left the road but for the presence of a pothole that she perceived was about as wide as the front of her vehicle. Thus, the condition of the road was a substantial factor in the accident, without which the accident would not have occurred.
While we agree with the Policy Jury that the physical evidence clearly shows that Sheila could not have hit the pothole, we disagree with the defendant that this relieves them from their conduct in the cause-in-fact of Sheila's accident. In a duty/risk analysis of the Police Jury's conduct in this accident, the record clearly establishes that but for this pothole, this accident would not have happened. Therefore, this analysis makes the pothole a substantial factor in causing the accident and injuries.

COMPARATIVE FAULT
The Police Jury argues that its percentage of fault should be lowered and Sheila's percentage of fault increased because Sheila did not lose control of her vehicle when she hit the pothole, but lost control of her vehicle 100 feet before the pothole. The district court assessed Sheila with 50% of the fault; it apparently agreed with the defendant that Sheila's own negligence in the operation of her vehicle was one of the causes of the accident and contributed to the plaintiffs' injuries. The Police Jury now argues that its 50% of the comparative fault is too high.
In determining percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relationship between the conduct and the damages claimed. Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967 (La.1985) (quoting the Uniform Comparative Fault Act § 2(b)). Several factors may influence the degree of fault assigned: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties. Watson, 469 So.2d at 974. Because each of these factors are factual considerations, the manifest error/clearly wrong standard applies. Socorro v. City of New Orleans, 579 So.2d 931 (La.1991); Rollins v. Evangeline Parish Police Jury, 93-1293 (La.App. 3 Cir. 5/4/94); 640 So.2d 432, writ denied, 94-1446 (La. 9/23/94); 642 So.2d 1291. While we find the assessment of fault against the Police Jury high given the circumstances of this case, under the manifest error/clearly wrong standard we cannot say the trial court abused its wide discretion.

*403 DECREE
For the foregoing reasons, the judgment of the district court is affirmed. Costs of this appeal are assessed to the defendant, Evangeline Parish Police Jury.
AFFIRMED.